**WORLD OIL CO., Inc., v. HICKS et al.**

No. 13007.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 28, 1934.

Rehearing Denied Nov. 16, 1934.

See, also, 46 S.W.(2d) 394.

W. L. Dean, Boykin & Ray, and Perkins & Culbertson, all of Fort Worth, for appellant.

Clay Cooke and Walter D. Nicholson, both of Fort Worth, for appellees.

DUNKLIN, Chief Justice.

This suit was instituted by L. R. Hicks, Jr., against Chester R. Bunker and the World Oil Company, a corporation, to recover damages for alleged libel against the plaintiff, the nature of which will be hereinafter noted. After its institution, the plaintiff died, and his widow and sole legatee, Mrs. Catherine Hicks, together with John C. Hicks, independent executor of his last will and testament, were, by leave of court, substituted as plaintiffs, and the World Oil Company, Inc., by and through George H. Campbell, its receiver, has prosecuted this appeal from a judgment rendered against it.

The judgment was against both the oil company and Bunker jointly. It recites that Bunker had been duly served and had filed an answer in the case but did not appear at the trial.

The record shows that the World Oil Company, through its receiver, who had been duly appointed as such by the federal court, filed pleadings, and upon the trial the contest was solely between him and the plaintiffs. No appeal has been prosecuted by Bunker.

Another and separate suit had been filed by L. R. Hicks, Jr., against the World Oil Company and Chester R. Bunker to recover on an alleged contract of employment of him by defendants for services rendered as a broker in handling stocks belonging to the company. In that suit Hicks failed to recover against Bunker, but recovered a judgment against the company for $45,000, from which the oil company prosecuted an appeal, and upon appeal that judgment was reversed and judgment was rendered in favor of the oil company, as shown in opinion by this court, reported in 19 S.W.(2d) 605, and affirmed by Supreme Court, as reported in Hicks v. World Oil Co., 34 S.W.(2d) 581. Bunker, as president of the oil company, then undertook to make a supersedeas bond in order to suspend the execution of the judgment pending the appeal, and to that end wrote and mailed a letter addressed to all the stockholders in the defendant company appealing for contributions necessary to make the supersedeas bond.

This suit for libel was based on certain statements contained in that letter. The letter was replete with assertions to the effect that the judgment recovered by Hicks was without any foundation, in that the oil company had never employed him as a broker as he claimed. It referred to Hicks as a broker who, together with other brokers, had been boosting the World Oil Company stock in their market letters, but that he had not been authorized so to do, and therefore the company was not liable to him for the commissions for which he had recovered judgment in the sum of $45,000.

The charge of libel was based chiefly upon the following statements in the letter: "These so-called brokers and bucket shops are operating in open violation of the law. They are selling stock that they haven't got and when the accounts are paid up they are faking to make delivery right and left and as they are not very strong financially, the client is going to be left holding the sack and in lots of cases, is going to suffer complete loss of his entire investment made with these bucket shops. The things that these brokers have said about the companies that I am en-

deavoring to head have hurt us. The lies that they have been putting out on us have been detrimental to our best interest and they have succeeded in some cases in frightening some of my stockholders into selling their stock at a ridiculous price, but I am glad to say that the great majority of the World Oil Company and the World Exploration Company stockholders are standing pat and are seeking their information from company headquarters and are not believing the lies that are being put out by these parasites that are masquerading under the name of brokers."

It was alleged that that statement referred to, and was intended to include, the plaintiff Hicks as well as other brokers.

The contents of the letter on which this suit was instituted are more fully set out in the opinion of the Texarkana Court of Civil Appeals on a former appeal of this case and appearing in 46 S.W.(2d) 394. That court held that the letter in question was qualifiedly privileged, and that, in order to recover, the burden was upon the plaintiff to prove that when written it was prompted by actual malice towards Hicks. The Supreme Court denied a writ of error in that case.

In answer to special issues, the jury returned findings sustaining plaintiff's allegations of libel by Bunker in writing the letter above noted; that the same was prompted by malice towards the plaintiff; and that the directors of the oil company wrote and sent out the letter, and in so doing were actuated by malice; and assessing actual and financial damages for injuries to the character, feelings, and health of the plaintiff during his lifetime in the sum of $50,000, and punitive damages in the sum of $15,000; and judgment was entered in plaintiff's favor for the damages so assessed, aggregating $65,000.

■ The first issue submitted to the jury, inquiring whether or not the letter on which this suit was based referred to Hicks, was not subject to the objection made that the same involved the construction of a written instrument by the court, and therefore not a proper issue to be determined by the jury. We believe it clear that the jury must necessarily have construed the word "referred" as an intention to refer to Hicks as one of the brokers operating bucket shops who were parasites and thieves and who had put out propaganda and lying statements about companies and were operating in violation of the law. Nor was it necessary to further instruct the jury, as requested by appellant,

that in answering that issue they should consider all the facts and circumstances surrounding and prior to the writing of the letter in determining whether the letter did refer to plaintiff as one of the brokers. We overrule the further assignment to the refusal by the court of appellant's requested instruction that "malice can not be inferred alone from the letter or any recitation therein."

In I. & G. N. Ry. v. Edmundson, 222 S. W. 181, 184, which was a suit for libel based on a privileged communication, and therefore the burden was upon plaintiff to show malice in order to sustain the recovery, this was said by the Commission of Appeals: "Actual or express malice need not be proven by direct or extrinsic evidence. It may be inferred from the relation of the parties, the circumstances attending the publication, the terms of the publication itself, and from the words or acts of the defendant before, at, or after the time of the communication; but it must be evidence from which the jury may infer malice existing at the time of publication and actuating it. Gassett v. Gilbert, 6 Gray (Mass.) 94; Jackson v. Hopperton [16 C. B. (N. S.) 829], supra; 18 Halsbury, Laws of England, §§ 1304 and 1316."

■ Over defendant's objection, plaintiff introduced an article published in a newspaper called the "Western World," reading as follows:

"Hicks Arrested on Fraud Charge
"Complaint Alleges Broker has Sold
Stocks 'Short'

"Fort Worth, Texas.—Charges of using the mails to defraud in connection with sales of stock were filed against L. R. Hicks, Jr., Fort Worth broker, early this week by J. Forrest McCutcheon, assistant United States district attorney.

"Filing of the charges resulted from complaints alleging that Hicks had sold stocks 'short,' it was stated. Bond of $5,000 was asked by Mr. McCutcheon in the case and a warrant was issued by United States Commissioner Flynn.

"Hicks recently was awarded a judgment against World Oil Company in district court here in connection with an alleged stock sales agreement, but World Oil officials, declaring themselves astounded by the unexpected verdict, immediately declared that they would carry the case to the higher courts."

It was shown that the Western World was published by the Bunker Printing Products Company with different directors and offi-

cers, yet it was further shown that Bunker was president of both that company and the World Oil Company, and the evidence strongly tended to show that he was the controlling spirit in both. That publication was made more than a year after the writing and mailing of the letter made the basis of this suit.

Over appellant's objection, plaintiff also introduced the deposition of L. R. Hicks, Jr., who was dead when the case was last tried, to the effect that Bunker had at one time told the witness that he would not permit the Western World to publish records of any complaints filed in the federal court, and that, when the complaint filed against the witness in that court was dismissed, no mention of the dismissal was ever made in the same paper.

In the same deposition the plaintiff Hicks further testified that, after he learned of the letter, made the basis of this suit for libel, and that it had been mailed to the stockholders of the World Oil Company, he addressed a letter to Bunker requesting that he issue another letter to the same stockholders correcting and withdrawing the libelous statements contained in the first letter, and mailed the same by registered mail to the address of the office of the World Oil Company, where Bunker maintained an office; that the envelope containing the letter had plaintiff's return address thereon and was duly registered; that the same letter was mailed three times, but was returned to the writer after each mailing with the notation that it was unclaimed. Upon appellant's objection, the letter so written was not admitted in evidence, but the court did admit the envelope in which it was inclosed, over the same objection urged by the defendant. The envelope was admitted for the purpose of showing a refusal on the part of Bunker to have any communication from the plaintiff, and therefore pertinent to the issue of malice.

It is insisted that the article published in the Western World and the envelope mentioned above, together with the deposition of Hicks with reference thereto, were all inadmissible, because they were acts and declarations of Bunker occurring long after the writing and mailing of the letter made the basis of this suit, and not made while in the performance of any transaction for the defendant then pending. In support of that contention, appellant has cited Southern Surety Co. v. Nalle & Co. (Tex. Com. App.) 242 S. W. 197.

The majority of this court have reached the conclusion that the publication and all the other evidence just referred to was admissible for the purpose of showing the state of mind of Bunker at the time he wrote the letter, and therefore pertinent to the issue of malice. Hence the assignments of error addressed to the admission of that evidence are overruled.

From that conclusion the writer dissents; it being his conclusion that the admission of that evidence was in violation of the rule announced in Southern Surety Co. v. Nalle (Tex. Com. App.) 242 S. W. 197, and numerous authorities there cited. And in this connection he notes that, since the letter in controversy was a privileged communication as conclusively determined on the former appeal, malice was the gravamen of plaintiff's whole case for damages, both actual and exemplary. Furthermore, on the former appeal a judgment against Bunker personally for the same libel had been affirmed.

W. D. Nicholson, one of plaintiff's attorneys who had also been his counsel in the former suit for commissions, testified that he heard Bunker testify on the trial of that suit in answer to questions as follows:

"Q. You don't think much of Mr. Hicks? A. I certainly do not, no sir.

"Q. You did not think much of him at the time? A. No, sir.

"Q. Did you have any confidence in him? A. No, sir."

The same objection to the evidence discussed was urged to this testimony of Nicholson. We have been unable to agree upon the merits of the assignment to the admission of that testimony, but we shall not undertake a disposition of it, since we do not believe the evidence was material to the issues involved, and for that reason may not be admitted on another trial, although that was not one of the grounds of objection urged. Especially so, since the statements so made by Bunker on trial of the former suit were in response to specific questions, and since the same did not of themselves reasonably tend to show malice.

Depositions of W. L. Moseley, who was formerly a defendant in the case, had been taken but had been lost. A copy of them was introduced in evidence over the objection of the defendant, on the ground that the copy was not officially certified as true and correct; and on the further ground that Moseley was then present in court and could be placed on the witness stand and interro-

gated in person. It was proven without contradiction that the copy introduced was a true and correct copy of the original, and, although defendant had an opportunity to put Moseley on the stand, it failed to do so. Under such circumstances, the admission of the copy was within the discretionary powers of the trial judge.

■ According to the deposition so given, Moseley was treasurer and a member of the board of directors of the appellant corporation. The board of directors of the World Oil Company consisted of Chester R. Bunker, president, Mr. Granville, vice president, W. L. Moseley, treasurer, and E. Harriette Bunker. When the letter was written, all the directors except Granville were present and collaborated with Bunker in the writing of it, approved it as written, and authorized the mailing of it to the stockholders of the corporation; thus conclusively showing that the publication of the letter was the act of the World Oil Company.

■ W. E. Nichols and H. M. Marks both testified as witnesses that they had an intimate acquaintance with the plaintiff Hicks, and from frequent personal observations had noticed that, after the publication of the letter in controversy, the plaintiff appeared to undergo considerable mental suffering; that he had lost flesh and given evidence of declining health. There was no error in overruling appellant's objection to that testimony on the ground that those witnesses had not qualified as experts, since it is a well-settled rule that a layman may give his opinion on such matters when he testifies to facts upon which the opinion is based.

■ Plaintiff introduced a certificate signed by Geo. W. Parker, clerk of the United States court for the Northern District of Texas, that he had found no criminal proceedings had ever been filed on the docket of the United States court of Texas against L. R. Hicks. That certificate was offered to show that the charges filed against plaintiff Hicks before the United States district attorney and referred to in the publication in the "Western World," copied above, were never prosecuted. Evidence offered showed without contradiction that those charges were in fact dismissed by Mr. Forrest McCutcheon, assistant district attorney, and therefore were never filed on the docket of the United States District Court. We do not believe the official certificate of the district clerk was admissible under the rules announced in Edwards v. Barwise, 69 Tex. 84, 6 S. W. 677; Myers v. Jones, 4 Tex. Civ. App.

330, 23 S. W. 562; Burton v. Perry (Tex. Civ. App.) 53 S.W.(2d) 795, 797; all to the effect that: "When a party desires to prove the negative fact that there is no record, he must do so in the usual way,—by the deposition of the proper officer, or by producing him in court, so that he may be sworn and cross-examined as to the thoroughness of the search made."

Under the circumstances, it might be said that the admission of the clerk's certificate was harmless error, but we believe that on another trial it should not be admitted if the same objection is urged thereto.

■ We have all agreed that the assignment of error to the action of the court in rendering judgment for $12,000, after the trial court had found that the damages allowed by the jury were excessive to the extent of $53,000 and plaintiff had filed a remittitur of such excess, should be sustained, since there is no evidence in the record which would enable the trial court to determine with certainty that plaintiff was entitled to recover $12,000, at all events. In the absence of such proof, the undertaking by the court to fix the amount of damages would be an invasion of the province of the jury. Nor can this court say from the evidence to what extent the bias of the jury affected the amount of damages awarded, and therefore is in no position to suggest a further remittitur to be filed by the appellee to avoid a remand of the case for another trial. This conclusion seems to have abundant support in the following authorities and decisions therein cited: General Accident, Fire & Life Ins. Co. v. Bundren (Tex. Com. App.) 283 S. W. 491; Bower v. Lively (Tex. Civ. App.) 11 S.W.(2d) 556; G., H. & S. A. Ry. v. Craighead (Tex. Civ. App.) 175 S. W. 453; Chicago, R. I. & G. Ry. v. Johnson (Tex. Civ. App.) 224 S. W. 277. And for this error the judgment of the trial court is reversed, and the cause is remanded.

DUNKLIN, C. J., dissenting in part, as noted above.

### On Rehearing.

DUNKLIN, Chief Justice.

Counsel for both parties to this appeal have filed an agreement to correct a clerical error in the statement of facts wherein it is made to appear that the publication in the "Western World" with the heading "Hicks Arrested on Fraud Charge, Complaint Alleges Broker has Sold Stocks Short," was of date "Aug. 4th, 1929," while the true date of

that publication was "Aug. 4th, 1928." The letter on which the suit for libel was based was dated July 24, 1928. Accordingly, the statement in the opinion on original hearing that the publication was made more than a year after the writing and mailing of that letter is likewise corrected to conform to the agreement above referred to. However, notwithstanding that error in the statement of facts, the writer of the original opinion adheres to his former conclusion that the publication was not admissible.

In I. & G. N. Ry. v. Wilkes, 68 Tex. 617, 5 S. W. 491, 2 Am. St. Rep. 515, our Supreme Court sustained a judgment for a balance of damages remaining after plaintiff had filed a remittitur, since the evidence was ample to sustain the full amount found by the jury, and the remittitur was voluntary and without any intimation from the trial judge that the verdict would be set aside as excessive, unless such remittitur was filed. Former decisions of the same court were reviewed with a final announcement of the general rule applicable under the different circumstances leading up to and inducing a judgment for the balance remaining after a remittitur is filed. And we believe our conclusion on the merits of the assignment of error which we have heretofore sustained to be in accord with the rule announced in that decision.

The order entered by the trial court upon hearing defendant's motion for new trial recites that the motion would be sustained unless plaintiff would file a remittitur of the $15,000 found by the jury as exemplary damages and $38,000 of the amount found by the jury as actual damages, but that, if such remittitur be filed, a judgment would be rendered for the balance remaining of actual damages in the sum of $12,000. Upon that announcement by the court, plaintiff filed the remittitur suggested, after which judgment was rendered for such balance of $12,000 actual damages, and the motion for new trial was then overruled. The remittitur so filed by the plaintiff expressly recited that it was "without admitting that the verdict rendered herein is excessive," and that it was filed "at the suggestion of the court."

While there was no specific finding by the trial judgment that the evidence did not warrant damages in the amounts allowed by the jury, yet we believe it is quite apparent that the trial judge so concluded, and that such was his reason for requiring the remittitur.

It may happen, as appellee insists, that since, as shown in the opinion of the Texarkana Court of Appeals, the jury found in plaintiff's favor for $20,000 on the former trial, and on the last trial another verdict was returned for $65,000, a third jury will allow damages for at least the amount for which the last judgment was entered, yet we do not feel that such a probability is any proper ground for an affirmance of the judgment now under review.

The motion for rehearing is overruled.