Wallace A. BUCK et al., Appellants,

v.

Eldon SAVAGE, Appellee.

No. 13051.

Court of Civil Appeals of Texas.

Houston.

March 12, 1959.

On Filing of Remittitur March 19, 1959.

Rehearings Denied April 16, 1959.

Dyche, Wheat & Thornton, and E. H. Thornton, Jr., Houston, for appellant.

J. Curtiss Brown and W. James Kronzer, Houston, and Hill, Brown, Kronzer & Abraham, Houston, of counsel, for appellee.

WOODRUFF, Justice.

Appellants, Wallace A. Buck and Lincoln Laboratories, Inc., prosecute this appeal from the judgment of the District Court wherein damages aggregating $85,-000 were assessed against them in favor of appellee in a libel and slander suit, of which amount $60,000 was awarded as actual damages and $25,000 as exemplary damages. The cause being tried to a jury, judgment was entered pursuant to the verdict returned in answer to 41 Special Issues.

The facts showed that before the institution of this suit appellant, Lincoln Laboratories, Inc., for a number of years had been engaged through local salesmen in selling drugs to doctors, jobbers and drug houses in the central and southern parts of the United States, including the area of Ohio, Michigan, New York, Florida, Texas and Louisiana. Its home office was located in Decatur, Illinois, and its affairs were handled by appellant, Wallace A. Buck, the president and principal stockholder.

Early in 1949 appellee Savage was employed by appellant Buck as a salesman and division manager for Lincoln Laboratories, Inc., in Texas and Louisiana. In January, 1952, appellee was moved to Decatur, Illinois, and pursuant to a contract contemplating a five year period he was made sales manager and executive vice president of Lincoln Laboratories, Inc., in charge of personnel and sales promotion, at an annual salary of $15,000. As a part of his work appellee had access to the confidential files of appellant, including customer lists, cost studies and formulae used in its business. Late in 1952 an issue of policy developed between Mr. Savage and Mr. Buck concerning Mr. Savage's having authority to enter into contracts with prospective salesmen and, as a result, on January 21, 1953, appellee wrote Mr. Buck a letter outlining his grievances and suggesting that unless he was accorded more authority over the sales

personnel "a mutually satisfactory separation should be effected." Extended discussions followed which proved inconclusive, and later a misunderstanding arose concerning the time appellee should take his vacation and whether he was entitled to be paid for a vacation in excess of seven days. Another dispute arose about a deduction which was made from appellee's salary check without his consent to cover a loss occasioned the company by a salesman whom appellee had hired. About June 15, 1953, appellee Savage advised Mr. Buck he was tendering his resignation to become effective in 90 days. Thereafter appellee took a vacation of approximately 10 days or two weeks, returning to Decatur in the latter part of July. When he received his salary check he found that a deduction had been made for that part of the vacation in excess of 7 days. On July 30, 1953, after being told that he would not be paid for that part of his vacation he left a note on Mr. Buck's desk tendering his resignation to become effective immediately. Several conferences followed, but appellee never returned. Later, however, he was paid the amount which had been deducted.

It was shortly after this time, beginning in August, 1953, and continuing through December 18, 1953, that the oral and written statements giving rise to this suit were made and published. A more detailed statement of the contents thereof will be set forth in connection with the discussions that follow.

Within a few days after tendering his resignation on July 30, 1953, appellee moved his family to Houston and on September 23, 1953, he started in business selling about 25 pharmaceutical products to drug houses in the area in competition with Lincoln Laboratories, Inc. as well as other drug companies. Working with him were his wife and Carl Cade, a former salesman of Lincoln. Dow Hickam joined his firm five days later, followed by Jack Hitt about November 3, 1953. Both of these men had been salesmen for Lincoln Laboratories until a short time before joining appellee's organization. At the time of the trial in February, 1956, which was less than two and one-half years after appellee had started his business, he had 16 salesmen in his employ, about half of whom had formerly been with Lincoln Laboratories; and his complete force consisted of about 25 people.

As grounds for recovery the appellee in his trial petition alleged that the following statements contained in the following writings were made concerning the appellee:

In a letter dated October 30, 1953, written by appellant Buck to Jack Hitt, reference was made to appellee as being "ignorant", "inexperienced, adolescent and having other unmanly aspects of character" with the further comment, "Promises. How good are they? In fact, how good is his word?"

In another letter written by appellant Buck to Hitt, dated November 5, 1953, appellant referred to appellee as being completely "unprincipled", "engaged in a shoddy enterprise", "an unworthy conniver" and "a person who has no intention of carrying out any promise."

Two letters written by appellant Buck to Carl Cade dated November 11 and December 16, 1953, respectively, wherein appellant referred to appellee as being "disloyal" and acting "treacherously while in our employ", and in stating by innuendo that he was not "honest and forthright."

Also a letter of December 18, 1953, written by appellant Buck to Hitt, stated that appellee was selling "shoddy merchandise", "using deceitful tactics" and becoming a "shoddy, nervous, undernourished and overstimulated individual."

Articles written by appellant Buck appearing in the appellant Company's bulletins dated September 12th and 19th, 1953, were sent to about 40 salesmen and officers of the company and its affiliates over

a wide area. In the first of these appellee was spoken of in terms of "disloyalty", and in the second reference was made to him as "treasonable builders of mistrust" and "bad faith."

By their verdict the jury, in response to Special Issues Nos. 1 through 35, returned fact findings the effect of which established that each of the written statements hereinbefore set out was libelous and that they were made with actual malice toward appellee.

In addition the jury returned findings in response to Special Issues Nos. 36, 37 and 38, which found that an oral statement, hereinafter discussed, made by appellant Buck to Jack Hitt in August or September, 1953, was slanderous and that it had been spoken with malice toward appellee.

By their first Point, appellants assert that the Trial Court erred in admitting testimony, in refusing to strike it from the record, and in submitting Special Issues Nos. 36, 37 and 38 to the jury concerning the alleged slander, because there was no pleading or proof of special damages resulting to appellee in his office, business or profession. Appellee contends that the words spoken were slanderous per se and neither pleading nor proof of special damages was essential to his recovery.

In his first amended original petition, upon which appellee went to trial, the allegations of slander read as follows:

"And further in conversation with Mr. Hitt, Mr. Buck stated that Mr. Savage was 'queer' on Hickam, meaning an unnatural relationship between two men. The vile, vindictive, and untrue statements above set out of and concerning your Plaintiff caused him actual damages and exposed him to public hatred, contempt, ridicule and financial injury."

The appellee, in his prayer for relief, sought a recovery in the sum of $175,000 "actual damages" and an additional amount of $75,000 as exemplary damages. Special damages were neither pled nor proven.

Appellee relied upon the testimony of Jack Hitt to establish the slander. He testified that while he was still in the employ of appellant during the latter part of August, 1953, he visited Mr. Buck in his home in Decatur, Illinois. On that occasion, so he testified, Buck "talked about Mr. Savage's character and he said Mr. Savage was from the wrong side of the tracks and that his character wasn't—that he just didn't have any character, and he inferred that he and another fellow—he said they were going together."

Upon being asked what words were used in that connection, the witness replied: "He said that he felt that he was queer, and he and Hickam were going together."

On cross-examination by appellants' counsel, the following transpired:

"Q. Now it was during this stay in his home as I understand your testimony on direct examination on yesterday by Mr. Brown, that Mr. Buck made the observation to you concerning Mr. Hickam and Mr. Savage you testified about on yesterday? A. Yes, sir.

"Q. Now you are positive that he made those observations to you? A. Yes, sir.

"Q. Was he talking about Mr. Hickam and Mr. Savage?"

Mr. Brown, appellee's counsel, "There were several statements made that the witness has testified to, I assume he is referring to one having to do with abnormality."

"Mr. Thornton, appellants' counsel, "That is correct."

"A. I would say it dealt with morals.

"Q. No question in your mind about it? A. No.

"Q. And he was very positive about Mr. Hickam, is that correct? A. Yes, sir."

By their answers in response to Special Issues Nos. 36 and 37 the jury found that appellant Buck in talking to Jack Hitt stated that Savage "was queer with respect to Dow Hickam" and by this term appellant "meant an unnatural physical relationship as understood by the average person." In response to Special Issue No. 38 the jury found that the word "queer" was spoken by appellant Buck with actual malice toward Savage.

In this connection it should be noted that the defense of the truth of any such statements was expressly waived by the appellant.

The general rule in this state is, as we understand the law, that oral words though false and opprobrious are not actionable without pleading and proof of special damages unless they impute to another the commission of a crime or affect a person injuriously in his office, business, profession or occupation, or unless they falsely and maliciously or falsely and wantonly impute to a female a want of chastity. Billington v. Houston Fire & Casualty Insurance Co., Tex.Civ.App., 226 S.W.2d 494; Mayo v. Goldman, 57 Tex.Civ.App. 475, 122 S.W. 449; Hatcher v. Range, 98 Tex. 85, 81 S.W. 289.

Appellee contends that the slanderous words used in this case fall within the purview of each of the first two exceptions mentioned above. As we view the exception, however, which makes such false words spoken of another's conduct actionable per se as will affect one in his office, business or profession, they must "touch" him in some way that is harmful to one engaged in his particular office, business or profession. Scheidler v. Brochstein, Tex.Civ.App., 73 S.W.2d 907; Restatement of the Law on Torts, Vol. 3, pp. 177–181.

Under Sec. 573 of the work last mentioned, slanderous imputation affecting conduct of business, trade or profession is discussed. Under the topic "General Disparagement", page 181, it is said:

"Disparaging words, to be actionable per se under the rule stated in this Section, must affect the plaintiff in some way which is peculiarly harmful to one engaged in his trade or profession. Disparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession. It is not necessary that the defamer refer to the other as engaged in the particular profession or calling in question. It is enough if the statement is of a character to be particularly disparaging of one engaged in such an occupation. Thus, a statement that a physician consorts with harlots is not actionable per se although a charge that he makes improper advances to his patients is actionable; the one statement does not affect his reputation as a physician whereas the other does so affect it."

In 53 C.J.S. Libel and Slander § 32, p. 78, it is said:

"In order to be actionable as libel or slander affecting one in a special character or relation such as business, profession, or office, the language used must both concern him in such relation and tend to injure him therein.

"The rule is that, in order to render language concerning one in a special character or relation actionable, it must touch him in that special character or relation. The words must have such a close reference to such relation or character that it can be said that they are defamatory by means of an imputation on one in that character, distinct from, and independent of, an imputation on him as an individual. In order to be actionable it is not sufficient that the words be merely injurious to one whatever his pursuit, but they must

prejudice him in the special profession or business in which he is actually engaged. When the words spoken have such a relation to the profession or occupation of plaintiff that they directly tend to injure him with respect to it, or to impair confidence in his character or ability, when, from the nature of the business, great confidence must necessarily be reposed, they are actionable, although not applied by the speaker to the profession or occupation of plaintiff; but when they convey only a general imputation on his character, equally injurious to anyone of whom they might be spoken, they are not actionable, unless such application is made."

As we view the proof, the oral statements made by appellant Buck to Jack Hitt, while indeed scurrilous and vile, were not such as would affect one engaged in the business of operating a drug house any more than it would affect a person engaged in every type of business, trade or profession generally, and consequently the proof failed to bring these offensive words within this exception.

Appellee cites the recent case of Texas Plastics, Inc. v. Roto-Lith, Ltd., 5 Cir., 250 F.2d 844. As we construe the opinion, it supports the view here expressed. There the plaintiff was engaged in manufacturing and selling to the public plastic bags. The slander sued upon was an accusation that the plaintiff had "short-counted" its customers. It is difficult to conceive of a statement that would "touch" one in his business, occupation or profession with any greater particularity than to accuse a person who is in the business of selling a product to the public of "short-counting" or purposely failing to deliver to his customers the quantity of the product that they purchased.

However, we are of the opinion that the words used in the case in issue were slanderous per se because they did impute to appellee the commission of the crime of

sodomy which is a penal offense in Texas. Art. 524, Vernon's Ann.Tex.P.C.; 33 Amer.Jur., p. 65, Sec. 44; 27 Tex.Jur., p. 596, Sections 5 and 6. We have set out the testimony of the witness on this issue. If there was any vagueness in his testimony on direct examination relating to the import of Buck's oral accusations concerning Savage's conduct with Hickam, such testimony was made clear in appellants' cross-examination.

Concerning the sufficiency of statements to constitute a charge or an accusation of the violation of a criminal law in libel and slander cases, it has been said in 27 Tex. Jur., p. 596, Libel and Slander, Sec. 6, as follows:

"—Form of Imputation.—To be actionable, it is not necessary that the publication charge a crime in express words; it is sufficient if the charge is made by reasonable implication or insinuation, or if it consists of a statement of facts which naturally and presumably would be understood as a charge of crime by those who hear or read it, or if the language was calculated to induce those who heard or read it to understand that the person to whom it relates is guilty of a crime."

In our opinion the evidence is sufficient to support the jury's findings in response to Special Issues Nos. 36, 37 and 38. Hitzfelder v. Koppelmann, 30 Tex.Civ. App. 162, 70 S.W. 353; Gatley on Libel and Slander, Ch. 3, p. 54; Frazier v. Grob, 194 Mo.App. 405, 183 S.W. 1083. Such statement was actionable per se without proof of special damages. Scheidler v. Brochstein, supra; Maas v. Sefcik, Tex. Civ.App., 138 S.W.2d 897; West Texas Utilities Co. v. Wills, Tex.Civ.App., 164 S.W.2d 405; Zeliff v. Jennings, 61 Tex. 458.

Although no emphasis is placed on this fact, we find nothing in the record establishing what the statutory law regarding this offense may be in Illinois, where

so the proof shows, the conversation between Buck and Hitt occurred. In this state of the record it will be presumed that the laws of Illinois are the same as those in Texas. McCormick and Ray, Texas Law of Evidence, Sec. 99, p. 132; Henthorn v. Tyler, Tex.Civ.App., 266 S.W.2d 484; Ex parte Beeth, 142 Tex.Cr.R. 511, 154 S.W.2d 484.

Appellants' Point One is, therefore, overruled.

By a third Point appellants contend that in the absence of a plea for special damages caused by the alleged defamatory remarks and a republication thereof by others, it was error for the Trial Court over appellants' objections to permit appellee to testify that such defamatory statements were widely disseminated causing him to lose business in general. In reply appellee says that the objections which appellants are now raising were neither made nor preserved in the Trial Court.

A discussion of the respective positions of the parties on this Point necessitates setting forth the pertinent part of the testimony and the objection registered thereto as reflected by the statement of facts. This portion of the record reads as follows:

"Q. Mr. Brown (appellee's counsel): Now, I would like to go into the matter of the extent of these claimed defamations defamatory matters and the effect they have had. Will you state just exactly what effect have these defamatory matters that are set out in our pleadings had upon you in a business sense and in a personal sense. A. It is very difficult to separate personal and business, in the sense that I hold no particular degree as a doctor or attorney. All I can trade on really to earn the income that I have earned in the past and to continue to increase it as I hope to do, is my own reputation. My reputation of being able to do a particular job. That reputation is made up of past record, as all reputations are. If that past record is destroyed then I have nothing to trade on really in seeking a new position at that same level. I might be able to accept one as a salesman at seventy-five dollars a week, or something of that sort, but if all this record is wiped out I have none on which I can demand or request reasonably the income that I have had in the past. That is the reason I say the personal and business is sort of together, my personal reputation and business reputation. Further, I might say also that no one wants to hire in a high position a man who is controversial. They might not even believe some of these things said about me but they think where there is smoke there must be some fire and that would present a problem. In connection with business specifically, and my business specifically, I do know that these statements concerning my products and things of that sort have been disseminated very widely and they have caused me to lose business in general.

"Mr. Thornton: That calls for hearsay testimony and mere opinion and conjecture of the witness and no proper predicate has been laid for the introduction of such testimony, and a general statement of imaginative damages and not supported by the pleadings, and I move it be stricken and the jury instructed to disregard it.

"The Court: Overruled.

"Mr. Thornton: Note our exception.

"Q. Were these statements, particularly in the bulletin, disseminated in areas where you had never been known and are not now known so that your own character and/or reputation would refute them? A. Yes, sir."

It is apparent from a reading of the record that no objection whatever was made to the second question and answer. Turning now to a consideration of the objection which appellants leveled to the

appellee's answer to the first question, it was at most a general one which failed to specifically point out that portion of the answer which appellants now on appeal contend was erroneously admitted by the Trial Court. Clearly the objection did not point out, nor was it confined to that part of the answer wherein appellee testified that the wide dissemination of the defamatory statements caused him to lose business.

In holding that it was not error for the Trial Court to overrule such an objection, our Supreme Court in Brown & Root v. Haddad, 142 Tex. 624, 180 S.W.2d 339, 341, said: "A general objection to evidence as a whole, whether it be oral or documentary, which does not point out specifically the portion objected to, is properly overruled if any part of it is admissible." The Court cited many cases supporting its ruling.

Finding no error on the part of the Trial Court in overruling the objection made by the appellants to the admissibility of this testimony, their Point Three is therefore overruled.

■ In Point Four, appellants contend the Trial Court erred in refusing to allow appellant Buck to testify in connection with their pleas of justification and mitigation of damages to certain statements made to him by Dow B. Hickam, Norman Titus and one Carter before September 12, 1953, which was prior to the date that it was alleged any libelous statement was made by Buck.

In this connection it was shown that the Trial Court refused to allow appellant Buck to testify that on September 12, 1953, and before the libels contained in the bulletins of September 12 and 19, 1953, were published, Dow B. Hickam, who on that day quit Lincoln Laboratories and went to work for appellee, told him that Savage was going to cut the appellant Company's business to pieces and that many of the salesmen were going to leave and go to work for Savage. It is contended, too, that the Trial Court

likewise erred in refusing to permit Mr. Buck to testify to his conversation with Norman Titus on September 13, 1953, who stated that Hickam had told him on September 12, 1953, that he, Hickam, was going in business with Savage and that they were out to get appellants' personnel and business. Similar complaint was made to the Trial Court's refusal to allow Buck to testify that one of appellants' employees, Mr. Carter, told him in the latter part of 1953 that Hickam, who was then working for appellee, was contacting former customers of the appellant and telling them that the same company was making Lincoln's and appellee's products and that appellants' research director was also appellee's research director.

Appellants urge that though this testimony was incompetent to prove the truth of any such statements it was admissible on their pleaded defense of justification and in mitigation of damages to show the source and nature of the information given to appellant Buck, and upon which he predicated the defamatory statements attributed to him and especially where exemplary damages were sought.

■ In support of this contention, appellants rely on Shely v. Harney, Tex. Civ.App., 163 S.W.2d 839; Democrat. Publishing Co. v. Jones, 83 Tex. 302, 18 S.W. 652; Schulze v. Jalonick, 18 Tex.Civ.App. 296, 44 S.W.2d 580; and Ledgerwood v. Elliott, Tex.Civ.App., 51 S.W. 872. These authorities all involve instances in which hearsay testimony of prior reliable rumors of the truth of the defamatory statements were admitted in evidence. This character of testimony has been held to be admissible in mitigation of damages because proof of the pre-existence of such rumors tend to show that the plaintiff's good reputation had been impaired before the complained of statements attributed to the defendant were made, and moreover, where exemplary damages are sought, the fact that the defendant, if he so testified, relied on such rumors, though false, may be taken into

consideration by the jury in determining such damages. In our opinion these cases have no application to the question of provocation which is before us here. There are authorities, however, to the effect that under certain circumstances hearsay testimony of provocation is admissible in libel and slander cases in mitigation of damages. One essential to the application of the rule is that it must be shown that the plaintiff provoked the defamation. 132 A.L.R. 932; Frizzell v. Woodman Publishing Co., Tex.Civ.App., 130 S.W. 659, 661. Another requirement, according to the weight of authority, appears to be that it must be shown that the defamation upon which suit is brought must have followed the provocation before sufficient time has expired to permit passion to subside; and a third rule is that although libelous publications or slanderous statements made by the plaintiff against the defendant may be shown to extenuate the latter's offense, such evidence is inadmissible if there is no connection between the provocation and the defamation sued for. See 132 A.L.R. 932, et seq. Testing this excluded evidence by these rules, we find that none of the statements offered to show provocation were purportedly made by the appellee. In fact, there is no proof to show that he ever knew that such statements were made. Moreover, it does not appear that such provocatory remarks were made so nearly contemporaneous with the libelous statements sued for that there was not sufficient time for passion to subside; and the third requisite is not met because there is no connection shown between the provocation and defamations published by appellants. The Trial Court did not err in excluding such testimony, and Point Four is overruled.

Appellants' Fifth Point is that the Trial Court erred in failing to hold that the evidence was wholly insufficient to show that appellant Wallace A. Buck was motivated by malice toward appellee at the time it is alleged he made the slanderous and libelous statements. Appellants argue that all of the written statements were contained in five letters written by Mr. Buck to Mr. Hitt and Mr. Cade, two former employees; two bulletins mailed to the company's salesmen and officers; and the oral statement made by Mr. Buck to Mr. Hitt while the latter was in appellants' employ. Consequently, so appellants contend, these communications were conditionally privileged and cannot form the basis for a recovery in the absence of proof of malice.

Appellants place emphasis on Mr. Buck's testimony to the effect that it was his purpose in writing the letters to Hitt and Cade to get them to return to their employ with Lincoln Laboratories and, therefore, they were written in defense of appellants' business. Mr. Buck denied that at the time he wrote the letters he bore any malice, ill-will, or ill feeling toward Mr. Savage. He had nothing but "fear" so he said, as to what was then happening or what was going to happen.

■■■■ A qualified or conditional privilege, as we understand the rule, comprehends bona fide communications, oral or written, upon any subject in which the author or the public has an interest or with respect to which he has a duty to perform to another owing a corresponding duty. Such privilege is termed conditional or qualified because a person availing himself of it must use it in a lawful manner and for a lawful purpose. The effect of the privilege is to justify the communication when it is made without actual malice. 27 Tex.Jur., p. 649, Sec. 35, Libel and Slander. It may be said, therefore, that where a statement or publication is made under circumstances which render it conditionally privileged, though it be false, malice cannot be inferred therefrom, nor can it be based upon the character of the language used alone. Simmons v. Dickson, Tex.Com.App., 213 S.W. 612; Laughlin v. Schnitzer, Tex. Civ.App., 106 S.W. 908; Cyrus W. Scott Mfg. Co. v. Millis, Tex.Civ.App., 67 S.W.2d 885; International & G. N. Ry. Co. v. Edmundson, Tex.Com.App., 222 S.W. 181;

Nunn v. Webster, Tex.Com.App., 260 S.W. 157; Bradstreet Co. v. Gill, 72 Tex. 115, 9 S.W. 753, 2 L.R.A. 405.

■ The law, therefore, places the burden on the plaintiff to prove that the defendant in the exercise of a conditional privilege was prompted or partially prompted by malice or a want of good faith. Nunn v. Webster, supra; Cranfill v. Hayden, 97 Tex. 544, 80 S.W. 609; International & G. N. Ry. Co. v. Edmundson, supra; 27 Tex.Jur., p. 676. Moreover, if the defendant was in any degree actuated by malice in making or publishing a defamatory statement, the privilege is lost. Such malice has been defined to be "ill-will, bad or evil motive, or such gross indifference to the rights of others as will amount to a willful or wanton act." Lattimore v. Tyler Commercial College, Tex.Com.App., 24 S.W.2d 361, 363; Cranfill v. Hayden, supra.

■ While actual or express malice must be proved, it need not be proved by direct or extrinsic evidence. Proof of facts and circumstances from which it may be reasonably inferred is sufficient. Missouri-Pacific Ry. Co. v. Behee, 2 Tex.Civ.App. 107, 21 S.W. 384, error ref.; Koehler v. Sircovich, Tex.Civ.App., 269 S.W. 812.

■ Such proof may also be made by showing that the publisher knew that the statement was false at the time he published it; or by showing bad motive in his making the publication by giving it more publicity than was necessary to protect the interests of the parties concerned; or that the publisher entertained ill-will toward the complaining party. Missouri-Pacific Ry. Co. v. Behee, supra; Lattimore v. Tyler Commercial College, supra; International & G. N. Ry. Co. v. Edmundson, supra.

It is, therefore, necessary to consider, in the light of these rules, the sufficiency of the evidence to support the jury's finding that Mr. Buck published the statements, upon which suit was based, with malice. At the outset we think significance may be attached to the appellants' expressly waiving "truth" as a defense.[1] Mr. Buck admitted, too, that within a few days after appellee resigned he offered him a connection with Lincoln of Texas, coupled with a stock ownership, which Mr. Savage rejected. However, in characterizing Mr. Savage's services while he was in appellants' employ, Mr. Buck testified that "I believe we could say that he lacked loyalty." He also testified that appellants had had an experience with Mr. Savage indicating, "He wasn't exactly honest" in connection with the "lifting of certain confidential files of the Company." He also referred to appellee as "an extremely egotistical man," and in describing his work during the time he was in their employ Mr. Buck said, "His selection of personnel was of a low order; he had all the scalawags in the country on his payroll." On cross-examination he admitted that he had said that Mr. Savage "considered himself pretty," an "intellect," and "the final word on everything." It was shown, too, that one of appellee's letters, which had been addressed to him at Decatur, was opened by Mr. Buck and forwarded to appellee with the notation, "opened through curiosity;" that appellants failed to deliver appellee's dividends on stock that he owned in the company in the ordinary manner but handled it through its attorney; and that in regard to the return of appellee's car allowance Mr. Buck had agreed with the auditor, "We will just let him wait. * * * It was kind of a joke." In explaining why a deduction had been made from appellee's salary check when a salesman whom appellee had hired

---

1. See Gibler v. Houston Post Co., Tex. Civ.App., 310 S.W.2d 377, 386 where it is said: "Under the statute defining 'libel,' a libelous publication, contrary to the common law rule, is actionable without proof of malice, regardless of whether it is libelous per se, and it is not necessary to the right to maintain an action for publication not libelous per se to allege or prove special damages."

caused the company to lose money, Mr. Buck said he didn't recall it but if it did happen, "it was a big joke," and in giving the reason as to why appellee's pay check after his vacation was "docked" one week's time (which incidentally resulted in appellee's immediate resignation), appellant said he gave the directions to make the deduction "and see what happened."

In our opinion the evidence was amply sufficient to raise the issue of malice on the part of Mr. Buck in making and publishing the libelous and slanderous statements and to support the jury's answers to the Special Issue that he was motivated by malice. Point Five is accordingly overruled.

In Points Two and Six appellants contend that the Trial Court erred in not granting their motion for new trial based on alleged jury misconduct and in failing to hold that the jury's findings of damages were without support in the evidence. Appellants further urge that such award of $60,000 actual and $25,000 exemplary damages were so excessive that as a matter of law a remittitur should have been required by the Trial Court.

In an effort to prove jury misconduct, appellants relied on the testimony of two of the three jurors whom they called to testify upon the presentation of the motion for new trial. The first juror, they contend, was prejudiced against Mr. Buck because he testified that he was of the opinion that a man who managed a company which manufactured injectible drugs should be above reproach. The other juror testified that although he thought appellants' counsel was brilliant during the trial he developed a personal feeling toward him which, though it was neither strong nor one of hate, caused him to not want to talk to the attorney after the trial. We are unable to find any misconduct on the part of the first juror who, during the course of the trial, formed a private opinion about one of the litigants, though it was uncomplimentary and certainly the conduct of counsel is a legitimate subject to which consideration may be given by the juror. J. D. Wright & Son Truck Line v. Chandler, Tex.Civ.App., 231 S.W.2d 786, n. r. e.; City of Waco v. Killen, Tex.Civ.App., 59 S.W.2d 940.

Moreover, the proof showed that neither juror made any statement to any of the other jurors revealing his sentiments, nor was any other overt act of misconduct shown. The testimony amounted to no more than having the jurors relate their mental reactions to some of the evidence in reaching their verdict. A juror cannot impeach his verdict by testifying to his mental reactions in the absence of some overt act of misconduct. Bradley v. Texas & Pacific Ry. Co., Tex.Com.App., 1 S.W.2d 861; Rule 327, Texas Rules of Civil Procedure, Note 5 and cases there cited.

Appellants also contend that the amount of the verdict was so excessive, when considered in the light of the evidence, as to warrant the conclusion on appeal that it was the result of passion and prejudice or other improper motive without the necessity of extraneous proof thereof. Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017; World Oil Co. v. Hicks, Tex.Civ.App., 75 S.W.2d 905; Id., 129 Tex. 297, 103 S.W.2d 962. Rule 440, Texas Rules of Civil Procedure.

We have heretofore set forth the nature of the odious and vicious statements made and published by appellant Buck concerning Mr. Savage. They were, indeed, offensive and vicious and we experience no difficulty whatever in concluding that the $25,000 awarded by the jury as exemplary damages was not excessive. The same is not true, however, in regard to the jury's finding of $60,000 as actual damages. We are fully cognizant of the decided cases in which large awards of damages have been allowed to stand in libel and slander suits. 35 A.L.R.2d 218; Texas Plastics, Inc. v. Roto-Lith, Ltd., 5 Cir., 250 F.2d 844, and cases cited therein. Moreover, we give rec-

ognition to the principle in the law of libel and slander that proof of special damage is unnecessary in order to recover substantial general damages. West Texas Utilities Co. v. Wills, Tex.Civ.App., 164 S.W.2d 405; 27 Tex.Jur., p. 691. Though the statements, oral and written, were highly offensive and might well have been calculated under ordinary circumstances to cause extensive damages, the affirmative proof coming almost exclusively from the appellee and his witnesses will not, in our opinion, warrant the conclusion that they caused actual damages in the sum of $60,000.

In the submission of the case to the jury appellee relied on 16 libels and the one slander for recovery of damages. Fourteen of them, including the slander, were communicated to either Jack Hitt or Carl Cade. Only 3, therefore, were contained in the bulletins. In the two issues of that publication appellee was referred to in terms of "disloyalty", "bad faith", and "treasonable builders of mistrust." Moreover, it was Jack Hitt alone who received letters containing 10 of the libelous statements and, too, it was only in his presence and that of his wife and Mrs. Buck that appellant Buck spoke the slanderous words to Mr. Savage.

To say that Jack Hitt and Carl Cade gave any credence or publicity whatsoever to these statements, written or oral, is contrary to all reason. They were offered as witnesses by the appellee and neither so testified. The strongest proof, however, is found in the fact that both of them were either in the employ of Savage or about to enter his employ when the communications were received. Carl Cade, in fact, had terminated his employment with appellants and had joined Mr. Savage as his first employee when he received his letters. Jack Hitt, by his own testimony, demonstrated that neither the libels nor the slander had any effect whatever on his esteem for Mr. Savage but they only engendered in him a deep resentment toward Mr. Buck which manifested itself about the time he started working

for the appellee in his suggesting to Mr. Savage that he should file suit against the appellant. In our opinion, therefore these 14 communications received by Mr. Cade and Mr. Hitt would not justify the awarding of any appreciable amount of actual damages whatsoever.

Turning now to a consideration of the damages that the remaining 3 libels, which were published in appellants' bulletins of September 12th and 19th, caused Mr. Savage, the proof showed that copies were sent to about forty of the appellant's salesmen and its officers scattered over a large area, principally in the central and southern portion of the United States. If Hitt, Cade and Hickam had been the only former employees of the appellants who had joined the appellee's organization during the two and one-half years intervening between the time appellee started in business and the date of the trial, it might have been inferred that Mr. Savage had suffered appreciable damage to his reputation and good name in the minds of those who had received the bulletins. However, according to appellee's own testimony, in May, 1954, in less than eight months after he started in business with only his wife and Carl Cade in his organization, he had six salesmen working for him, all of whom had worked for Lincoln. At the time of trial in February, 1956, approximately two and one-half years after appellee started his business, his organization had expanded to twenty-five people, including sixteen salesmen, nine of whom were former employees of the appellants. Such marked progress for any new business, starting, according to appellee's testimony, with less than fifty days' preparation, goes far to dispel the deduction that any vicious rumors were being repeated which cast a cloud upon its management's good name or reputation. Moreover, it furnished strong evidence that Mr. Savage's reputation, both personal and business, was not suffering damages of any consequence at the time of trial nor would it do so in the future.

For whatever it was worth, Mr. Buck testified that appellants at the time of trial didn't have a single man in the Texas division who was with them when the libels were published, and that their business had gone "very far down."

At this point we direct attention to a very marked distinction between the facts of this case as we view them and those in Texas Plastics, Inc. v. Roto-Lith, Ltd., 5 Cir., 250 F.2d 844, the case upon which appellee in his argument has placed great emphasis. There it was shown that the plaintiff's profit of $60,000 for the year 1954 was followed by a loss of $71,000 in 1955, the year during which the slanderous statements were allegedly made. What better proof of damages can be offered than this? The jury, however, returned a verdict of $25,000 as actual damages and $50,000 exemplary damages. The learned Trial Judge, in the exercise of his sound discretion, ordered a remittitur of $25,000 of the exemplary damages and entered a judgment for the total amount of $50,000.

In the case before us appellee's only attempt to offer any direct proof of damage came from the testimony of the appellee. That evidence has heretofore been set out in full under Point Three. A reference thereto will disclose that in response to his counsel's question asking that he state the effect the defamatory matters had upon him "in a business sense and a personal sense," appellee placed emphasis on his reputation "to do a particular job" and concluded therefrom that personal and business reputations are "sort of together." He offered his opinion, too, that "no one wants to hire in a high position a man who is controversial" and concluded with the remark: "I do know that these statements concerning my products and things of that sort have been disseminated very widely and they have caused me to lose business." The last statement was left without further elucidation.

After a careful study of the record in this case and the pertinent authorities, we are of the opinion that the jury's verdict of $60,000 for actual damages is excessive in the sum of $35,000 and, that, under the provisions of Rule 440, Texas Rules of Civil Procedure, the cause should be reversed and remanded unless appellee files a remittitur of this sum within the time hereinafter provided.

In Points of Error Nos. 7 through 20 appellants say that the written statements upon which appellee predicated the suit neither referred to nor mentioned appellee by name and, in the absence of a pleading of innuendo, they were not libelous per se and therefore the Trial Court erred in refusing to so hold and in predicating Special Issues thereon which were submitted to the jury.

Though they have not been set forth as fully as they were in appellee's petition, we believe that we have sufficiently set out the statements alleged by appellee to be libelous to show their true character and content. Appellee alleged that each of such written statements was made of and concerning him by appellant Buck. Moreover, without going into needless detail, each statement was of such character as to attack appellee either in his honesty, integrity, loyalty or intelligence, or the product he was selling as to touch and injure him in his business and employment. Therefore they were libelous per se and no innuendo was necessary to state a cause of action. Article 5430, Vernon's Ann.Texas St.; State Medical Ass'n of Texas v. Committee for Chiropractic Education, Inc., Tex.Civ.App., 236 S.W.2d 632.

The fact that he was not named in each of the letters or bulletins did not preclude them from being libelous. It is an established rule in this state that it is not necessary in order to render an article libelous per se that the plaintiff be named therein if he is pointed out by circumstances

so that he can be identified by at least some persons. Gibler v. Houston Post Co., Tex.Civ.App., 310 S.W.2d 377, writ ref., n. r. e. Appellants' Points 7 through 20 are accordingly overruled.

The judgment of the Trial Court will be affirmed if appellee Eldon Savage will file in this Court within Fifteen (15) days from date hereof remittitur in writing of $35,000; otherwise said judgment will be reversed and the cause remanded for a new trial.

BELL, C. J., not sitting.

On Filing of Remittitur.

On March 12, 1959, we indicated by an opinion in writing that if appellee would file a remittitur of $35,000 on or before March 27, 1959, the judgment of the trial court would be reformed and, as reformed, would be affirmed; and that otherwise the judgment of the trial court would be reversed and the cause remanded. Appellee has filed the suggested remittitur of $35,000.

Accordingly, as of this date, the judgment of the trial court is reformed by deducting the amount of $35,000 from the judgment recovered by appellee, and, as so reformed, is affirmed.

Three-tenths of the costs of the present appeal will be taxed against the appellee, Eldon Savage, and seven-tenths against the appellants, Wallace A. Buck and Lincoln Laboratories, Inc.

Motion for rehearing may be filed by either party within fifteen days after this date.

Reformed and affirmed.

BELL, C. J., not sitting.