**Sandra BRIDGES, Appellant,**

v.

**William E. FARMER and Northpark National Bank, Appellees.**

**No. 5166.**

Court of Civil Appeals of Texas, Waco.

Aug. 10, 1972.

Rehearing Denied Aug. 31, 1972.

Purnell, Gillis & Rogers, Tom Purnell, Dallas, for appellant.

Strasburger, Price, Kelton, Martin & Unis, H. Norman Kinzy, Dallas, for appellees.

## OPINION

JAMES, Justice.

This is a slander case wherein the trial court entered a summary judgment in favor of the Defendants. Plaintiff-Appellant Sandra Bridges was a bank teller employed by Defendant-Appellee Northpark National Bank of Dallas, Texas, under the general supervision of Defendant-Appellee William E. Farmer, Assistant Cashier of said Bank.

The record as a whole points up sharp disputes regarding the facts, one version being that of Mrs. Bridges and the other being that of Mr. Farmer; however, in the interest of furnishing a background for the controversy, the following facts are herewith presented: Mrs. Bridges had been employed as a teller by the Bank for three months at the time she was terminated on August 3, 1971. Mr. Farmer as Assistant Cashier was Mrs. Bridges's immediate supervisor, and he testified in his deposition that out of sixty working days she had been absent eleven complete working days, two half days, and was forty-five minutes late one morning; that he had spoken to her two times about it; and that her explanation of a part of these absent days was that she was ill with a virus. However, he said she was a very capable employee, and her services were satisfactory when she was on the job.

On July 30, 1971, he (Farmer) said she was $79.41 short, and on the morning of August 2, 1971, she was $250.60 short; and that it was possible at times that she might

have had overages. On one occasion he remembered when she had one overage of $100.00 which she located and returned to a customer. Her last day to work was Friday July 30, 1971, when she reported a shortage of $79.41 for that day. She did not report for work the following Monday, August 2, 1971, and on the morning of that day Mr. Farmer and another employee (a Mrs. Carr) checked the money and checks at Mrs. Bridges's window and found a shortage of $250.60. Upon finding this shortage, Mr. Farmer had a conversation with Mr. Hancock, the president of the Bank, wherein Mr. Farmer reported this shortage. Mr. Floyd Hamm, a vice-president and commercial loan officer overheard the conversation. According to Farmer's deposition, Hancock told him (Farmer) to give Mrs. Bridges an opportunity to make up the shortage, and if she claimed she didn't get the money, to ask her to take a polygraph (lie detector) test, and also tell her that she need not come back to work.

On the next day, Tuesday, August 3, 1971, Farmer called Mrs. Bridges on the telephone, and he says he told her the things President Hancock told him to say to her. He said she became disturbed and started crying, and said she would have to talk to her lawyer.

In her affidavit in opposition to Defendants' Motion for Summary Judgment, Mrs. Bridges says that when Farmer called her on the telephone on August 3, 1971, that he told her she was about $250.00 short and that Mr. Hancock, the bank president, wanted her to being the money back. She said she told Mr. Farmer that she had not taken the money, whereupon he told her she would have to take a lie detector test, and that if she refused to take the test, she would be charged with felony theft.

Farmer further testified that Mrs. Bridges called him back and said her attorney had told her to go ahead and take the lie detector test. Mr. Farmer then set up an appointment with Smith Detective Agency (which he located in the telephone

directory), and Mrs. Bridges was given the polygraph test by a Mr. Bill Haley. Farmer told Haley all the background facts concerning the shortages before the test was administered.

Farmer further testified that after the test was given, Haley called Farmer on the telephone and said he really couldn't prove that she had taken the money as evidenced by the two shortages, but said "she was definitely mixed up and had a problem with money". Farmer reported the results of the test to President Hancock.

After the test was given, Mrs. Bridges called Farmer and asked if the test proved that she took the money. Farmer replied that it did not prove that she took the money. Farmer then told her it would not be necessary for her to come back to work, and for her to turn her keys in. Farmer testified that at this point Mrs. Bridges told him that she did not like him (Farmer), or the Bank, and that it was all his (Farmer's) fault.

On Thursday, August 5, 1971, Farmer located the cause of the $250.60 shortage. A payroll check in that amount, with Mrs. Bridges's teller's stamp on it, was found by Farmer under the drawer in her teller's window. Farmer never did personally let Mrs. Bridges know that the $250.60 check had been found; but testified that one of the women (Mrs. Carr) employed in the Bank asked him if they shouldn't let her know, to which Farmer told her to "let her know".

Farmer further testified in his deposition that he had discussed the matter of firing Mrs. Bridges several times with Mr. Matthews, the cashier of the Bank, who was Farmer's immediate supervisor. Matthews and Hancock also discussed the matter among themselves.

Mrs. Bridges as plaintiff sued Farmer and the Northpark National Bank of Dallas as Defendants, for slander, alleging that Farmer (acting in the scope of his employment for the Bank) had said in the presence of other officers and employees of the Bank that she was short in the amount of $250.00 and that she had taken the money, which was understood by those who heard that she was being accused of the crime of theft. She sues for $195.00 actual damages (for a half month of unemployment) and $100,000.00 exemplary damages.

Defendant filed a Motion for Summary Judgment, supported by the affidavit of Floyd Hamm (a vice president and loan officer) and the deposition of Farmer. Mrs. Bridges filed an answer in opposition thereto, alleging that there were genuine fact issues that should be determined by a jury, which answer was supported by her affidavit.

The trial court granted Defendants' Motion for Summary Judgment and entered judgment that Plaintiff Mrs. Bridges take nothing.

Plaintiff-Appellant Mrs. Bridges appeals on one point of error, contending the trial court erred in granting Defendant-Appellees' Motion for Summary Judgment because the following material fact issues were raised:

A. Was the publication of the slander by Farmer to Hancock done with malice?

B. Was the publication of the slander by Farmer to Hamm done with malice?

C. Was the publication of the slander by Farmer to Haley done with malice?

D. Was the publication of the slander by Farmer to Matthews done with malice?

E. Was the publication of the slander by Farmer to Haley invited by the Appellant (Mrs. Bridges)?

F. Did the statement made in the presence of Hamm accuse Appellant of the crime of theft over $50.00?

G. Did Appellees give more publicity to this slander than was necessary to protect the interest of the parties concerned?

H. Did Farmer entertain ill will toward the Appellant?

We sustain Appellant's point of error, and reverse and remand the cause to the trial court.

Our Supreme Court in Great American Reserve Insurance Co. v. San Antonio Plumbing Supply Co. (Sup.Ct.1965) 391 S.W.2d 41 has laid down the following rules concerning summary judgments that are pertinent to the case at bar:

■ "Rule 166–A, Texas Rules of Civil Procedure, provides that summary judgment shall be rendered if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. (citations). In other words, the evidence must be viewed in the light most favorable to the party opposing the motion. (citations). If the motion involves the credibility of affiants or deponents, or the weight of the showings or a mere ground of inference, the motion should not be granted. All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. (citations). Evidence which favors the movant's position is not considered unless it is uncontradicted. If such uncontradicted evidence is from an interested witness, it cannot be considered as doing more than raising an issue of fact, unless it is clear, direct and positive and there are no circumstances in evidence tending to discredit or impeach such testimony. (citation)."

■ The question on appeal, as well as in the trial court, is *not* whether the summary judgment proof raises fact issues with reference to the essential elements of a plaintiff's claim or cause of action, but is whether the summary judgment proof *establishes as a matter of law that there is no genuine issue of fact* as to one or more of the essential elements of the plaintiff's cause of action. Rule 166–A, Texas Rules of Civil Procedure; Gibbs v. General Motors Corporation (Sup.Ct.1970) 450 S.W.2d 827. Here, since the Defendants' supporting affidavit (of Hamm) and the deposition (of Farmer) did not establish as a matter of law that there was no genuine issue of elements of Plaintiff's cause of action, the Plaintiff did not have the burden, to avoid summary judgment, of going forward with evidence of like quality. Gibbs v. General Motors Corporation, supra. Therefore, we do not concern ourselves with the probative force of Plaintiff's affidavit in opposition to the Motion for Summary Judgment.

In the case at bar, the summary judgment proof did not in any manner establish as a matter of law that there was no genuine issue of fact. On the contrary, the Defendant-Appellees' Motion for Summary Judgment was supported by the affidavit of Hamm and the deposition of Farmer, both of whom were interested witnesses, and the most that could be said is that the affidavit and deposition raised genuine issues of fact.

■ In the case at bar, Farmer's publication of the alleged slander to Hancock, Hamm, and Matthews appears to be conditionally privileged, because all four men were officers of the Bank, and the communications were upon a subject in which they had a mutual interest to protect or in which they had a duty to perform. This means that the alleged slander would not be actionable (as published to Hancock, Hamm and Matthews) unless the Defendants were actuated by malice. See Duncantell v. Universal Life Ins. Co. (Houston 14th Tex.Civ.App.1969) 446 S.W.2d 934, error refused NRE, and cases therein cited. However, if Farmer and the Bank (acting through Farmer) were in any degree actuated by malice in making or publishing a defamatory statement to any of the three men, then the privilege is lost.

See Buck v. Savage (Houston Tex.Civ. App.1959) 323 S.W.2d 363, error refused NRE, and the cases therein cited.

■ Although there was no duty here on Plaintiff-Appellant Mrs. Bridges to show these publications were made with malice, it should be pointed out in view of a trial on the merits that malice need not be proved by direct or extrinsic evidence. Proof of facts and circumstances from which it may be reasonably inferred is sufficient. Buck v. Savage, supra, and cases therein cited.

■ On the contrary, the Defendants here had the burden of establishing an absence of malice in order to be entitled to a summary judgment in their favor. Jackson v. Cheatwood (Sup.Ct.1969) 445 S.W. 2d 513. The record before us does not establish an absence of malice as a matter of law.

We hold the trial court erred in granting the summary judgment, and accordingly reverse and remand the cause to the trial court for a trial on the merits.

Reversed and remanded.