**SOUTHERN SURETY CO. v. DAVIS.   (No. 3397.)**

Court of Civil Appeals of Texas.   Texarkana.
June 9, 1927.

Rehearing Denied June 23, 1927.

1. **Libel and slander** ⊜➞6(3)—**Statement by contractor's surety to creditors, indicating that contractor was in financial distress, held actionable as "slander," if followed by pecuniary injury.**

Statement by contractor's surety to contractor's creditors, indicating that he was in financial trouble; that his credit was impaired; and that he was unable to meet obligations, *held* actionable as "slander," if followed by pecuniary injury as probable result of spoken words, since they were directed at and affected contractor in his business.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Slander.]

2. **Libel and slander** ⊜➞45(2)—**Statement indicating contractor's financial distress made by surety to creditors held "privileged communication."**

Statement by surety of contractor to latter's creditors, indicating that contractor was in financial distress, *held* "privileged communication," since surety had right to act in furtherance of and to promote its undertaking, and creditors had right to receive such communication.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Privileged Communication (In Libel and Slander).]

3. **Libel and slander** ⊜➞36—**Publication which can be rendered defamatory by proof of falsity and actual malice is not protected by absolute privilege.**

Where publication can be rendered defamatory by proof of falsity and actual malice, it is not publication protected by absolute privilege.

4. **Libel and slander** ⊜➞101(4)—**Where liability, in slander action, depends on malice, plaintiff must show existence of malice.**

In action for slander, in which liability of defendant depends on existence of malice, burden of proof rests on plaintiff to establish actual malice.

5. **Libel and slander** ⊜➞112(2)—**Evidence held insufficient to show that surety's statement to contractor's creditors, indicating financial distress, was prompted by malice.**

In contractor's action against surety for slander in making statements to contractor's creditors, indicating that he was in financial distress, evidence *held* insufficient to show that defendant was prompted by malice.

6. **Libel and slander** ⊜➞112(1)—**Evidence held insufficient to warrant recovery of exemplary damages for slanderous statements by contractor's surety to creditors indicating financial distress.**

In action by contractor against surety for slander in making statements to contractor's creditors, indicating that he was in financial distress, evidence *held* insufficient to warrant recovery of exemplary damages.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by J. M. Davis against the Southern Surety Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The appellee brought the suit against appellant for damages for alleged defamation spoken of him in reference to his business or employment and which was injurious to him in such capacity. The appellant entered a general denial and a plea of privilege. The case was tried before a jury on special issues, and, in keeping with their findings, a judgment was entered for the appellee.

The appellee was a contractor, and had been in that business for about 20 years. On February 25, 1924, appellee and the commissioners' court of Harris county entered into a written contract for the construction and completion, according to plans and specifications, of certain concrete bridges and culverts on the La Porte road running between the city of Houston and the town of La Porte. It was stipulated that all the work contracted to be done was to "be finished and fully completed within 90 working days thereafter, and for each and every day the said work herein contracted to be done shall remain uncompleted after the expiration of said time herein specified for the completion thereof the contractor shall pay to the county the sum of $20 per day as fixed and liquidated damages; it being distinctly understood that time is the essence of this contract." The total amount of the contract was $21,560. The contract price was to be paid in monthly installments on returns and estimates of the

engineer; 10 per cent. of the total contract price being retained until the work was finally completed. The contractor was required to give bond in the sum of $5,500 for the faithful performance and carrying out of all the terms and provisions of the contract. On February 28, 1924, the required bond was duly executed by appellee, as principal, and appellant, as surety, payable to the county of Harris. The bond obligated the principal and surety to perform and fulfill all the covenants and "to make payment promptly to all persons supplying him, the said principal, with labor, material, or equipment used or to be used in the carrying out of such contract, 'and' to pay to the county of Harris all loss or damage occasioned to it by reason of the failure of the principal to comply with each and every provision contained in said contract, and to keep and save harmless the county of Harris from any and all damages and claims of every kind and character as a result of the contract." As an inducement and as security to appellant to become surety the appellee executed the following assignment:

"And also we, the undersigned, do hereby convey and assign unto the said company any and all payments, funds, moneys, or property due or to become due to the undersigned as provided in the said contract, and also all our rights in and to all subcontracts which may have been or may hereafter be entered into, and the materials embraced therein."

Appellee began actual work under the contract on "March 14," 1924, at the completion of "the detour road" necessary for travel on the road. The work thereafter progressed, but was somewhat delayed by reason of weather conditions. As appears, on April 5, 1924, appellee duly executed a written assignment and transfer to Mr. Craig Belk as follows:

"In consideration of $10 and other valuable consideration not herein expressed, the receipt of which is hereby acknowledged, I hereby assign and transfer to Craig Belk all my right, title, and interest to any moneys that may be due under the contract that I am now engaged in, doing certain road work on the La Porte road, for the county of Harris; said contract being dated February 28, 1924. It is understood and agreed that this assignment does not relieve me of any of the obligation to continue the contract, and that Craig Belk assumes no liability in regard to the contract."

This assignment was thereupon filed with the county auditor. Mr. Ivey, it appears, had notice of the transfer. It further appears that "on June 23, 1924," the following order was duly entered in the minutes of tne commissioners' court:

"Moved by Commissioner Sherman, seconded by Commissioner Spencer: It is ordered that all contractors who are constructing bridges under the 1924 bond issue be and are hereby notified that, if their contract is not completed by the time specified, the full penalty for failure to do so will be exacted from them, and the county here now puts them on notice that the full strictness of their contract will be expected and will be enforced."

As agreed to, "the bridges being built on the La Porte road contract were under the 1924 bond issue"; and appellee knew of the order. He testified:

"Judge Bryan had me on the carpet just one time about the progress we were making on this work. That was in June; about the last of June. He told me that, if there was any way to do it, if we did not get through in the specified time, he would penalize us to the full extent of the law."

By July 1 about 98 days had elapsed since "March 24," when the actual work on the contract began, and "the job was only about half completed." As claimed by appellee, weather conditions alone caused the delay. Thereupon, as appears, "on July 1" Mr. Ivey called the appellee over the telephone, and the following conversation occurred, as testified to by appellee:

"The next time I talked to Mr. Ivey was along about July 1. He called me up by phone and wanted me to come down and see him, and asked me who I was buying material from. I told him I was buying sand, stone, and cement material from George Horton, and buying steel from Peden Iron & Steel Company. He asked me how much I owed Peden Iron & Steel Company and Horton. I told him, within a few dollars. He said, 'Are those the only two creditors you have?' and I said, 'Yes, sir.'"

Immediately following this conversation Mr. Ivey, on July 1, 1924, had a telephone conversation with the two creditors of appellee, Horton & Horton and the Peden Iron & Steel Company, of Houston, pertaining to the contract. As alleged and proven, the following conversation was had with Horton & Horton:

"This is Milton P. Ivey, representing the Southern Surety Company, and I wish to notify you that J. M. Davis, who is indebted to you, is in trouble on his La Porte job, and I, for my company, have notified the county auditor to hold up any further vouchers to Davis, and we are going to crack down on Davis, and, if Horton & Horton want their money, they had better get it now."

The following was the alleged and proven conversation had with the Peden Iron & Steel Company:

"This is Milton P. Ivey, representing the Southern Surety Company. My company has knowledge that J. M. Davis is indebted to your company, the Peden Iron & Steel Company, and that he owes you a balance on account, and I want to tell you that, if your company wants its money, they had better file their claim with the county auditor of Harris county quickly and take such steps as they can to get it, for Davis is in bad on his job, and we are going to crack down on him and stop his vouchers."

It was alleged and claimed by appellee that the statements meant, and were so taken and accepted:

"That plaintiff was then and there in financial trouble and distress and was unable to meet his obligations, and that his credit was impaired, and that his contract with Harris county was about to be taken away from him," and "that in the event Horton & Horton wanted their money they would have to procure it from Harris county, because plaintiff would not be able to pay same otherwise," and "that, unless Peden Iron & Steel Company got their money from Harris county by summary proceedings, they would be unable to ever obtain the same, as plaintiff could not pay the same."

Mr. Ivey was the agent and representative of appellant, as manager of the branch office in Houston. The two creditors had claims aggregating $2,673; and the accounts were past due and unpaid at the time of the conversation. The appellee claims that he had an established line of credit with these two firms, and that he had been regularly paying them, and that at the particular time they were not pressing him for payment, and that he was able to pay and would have paid the same out of his contract price. Afterwards, on August 13, 1924, appellant, through Mr. Ivey, filed its assignment from appellant with the county auditor. After that time, on account of the two assignments being on file, all payments on the rest of the contract price were held up by the county auditor. Appellee claims that, being deprived of the use of the money, he was forced to borrow money at great expense of interest; that by the acts and conduct of appellant he was hindered and delayed in the work, and unable to employ a full crew of workmen, and suffered a loss of $3,000 on the contract; that as a result of "the slanderous language" he suffered mental anguish and humiliation and loss of credit and standing as a contractor.

The jury made the findings that the agent of appellant spoke the words alleged, and that malice prompted the statements.

King, Battaile & Sonfield, of Houston, for appellant.

A. C. Wood, of Houston, and W. M. Lewright, of San Antonio, for appellee.

LEVY, J. (after stating the facts as above). [1] The appellant presents the two propositions in view, in effect, that (1) the words of the alleged conversations are not actionable and constitute no slander of appellee as a builder of public roads, or personally, and (2) if fairly imputing a defamation, the communications were nevertheless privileged, and there is no evidence that the appellant's agent was actuated by actual malice in making such communications. Taking the testimony of the witnesses, there was evidence substantially in support of the words spoken, as alleged. It was competent for the jury to find that the agent of appellant spoke the words. And duly considering the words spoken, and complained of as defamatory, there does not appear therefrom either an affront to the general sentiments of morality or decency, or criticisms of the road work itself. The words, though, are fairly directed at and touch appellee with reference to his business, as an imputation that he was in financial trouble and distress, and that his credit was impaired, and that he was unable to meet his obligations. Although the statement made by Mr. Ivey related only to the special contract that appellee had with Harris county, yet such conversation as a whole may not be understood as containing nothing more than necessary to accomplish the purpose of having the two creditors file their claims with the county auditor for immediate payment. The words in themselves are reasonably capable, as the trial court correctly determined, of conveying an injurious meaning or producing an injurious effect relating to the capacity, reputation, and standing of appellee personally in his business as a contractor. Such character of imputation, as generally decided, will support an action when malicious and false publication is made and pecuniary injury actually follows to the business as the probable and natural result of the speaking of the words. Whether or not pecuniary injury did in fact follow as the probable result of the spoken words in the present case becomes a different question. Therefore the first proposition is not sustained.

[2, 3] The second proposition must be sustained. We are of the opinion that the alleged defamation was a privileged communication in the circumstances, as the trial court concluded. The appellant was a surety on the bond of appellee. The bond was for the faithful performance of the work contracted to be done. Under the terms of the bond the appellee had agreed to pay promptly the liability for material; and he had promised to complete the contract, under penalty for failure to do so, within 90 days. The parties with whom the conversation was had were creditors of appellee within the terms of the bond. The surety had the right, and it was its privilege, to act in furtherance of and to promote its undertaking. The creditors had the corresponding right to receive the communication. But whenever a publication can be rendered defamatory by proof of falsity and with actual malice, it is not, as universally held, a publication protected by absolute privilege. And in the present case the trial court made the liability of appellant to depend upon malice vel non.

[4, 5] It is conceded that the burden of proof rested upon appellee to establish actual malice. The jury found that appellant, through its agent, was prompted by malice in the conversation. We are unwilling to sustain

that finding of fact, in the light of the record, as being contrary to the great weight of the evidence. The falsity of the statements of the spoken communication is very doubtful. There is ample evidence, in circumstances of adequate probative force, for appellant's agent to have had good reason or reasonable grounds for believing the communication to be true. The circumstances, for the most part, are inconsistent with the existence of malice. The time for the completion of the contract had expired and "the job was only about half completed." The appellee had been notified by the county that the penalty of the bond would be demanded for delay. About half of the contract price had been paid and appellee had given an assignment of all the balance to Mr. Belk. The bills of the two creditors had not been paid promptly. The agent also had urged the appellee to come to see him about the situation, and appellee refused to do so. Appellant had the right to file the assignment from appellee, and malice could not be predicated thereon. The privilege was not lost, if the agent of appellant believed the statements to be true and acted in good faith. Railway Co. v. Edmundson (Tex. Com. App.) 222 S. W. 181.

[6] We are of the opinion, further, that there was no sufficient evidence in the present record to warrant a recovery of exemplary damages, and that it was error to admit in evidence the letter complained of in the eighth assignment of error.

The judgment is reversed, and the cause is remanded.