## LATTIMORE v. TYLER COMMERCIAL COLLEGE et al. (No. 1292–5360.)

Commission of Appeals of Texas, Section A. Feb. 12, 1930.

W. T. Norman, of Rusk, G. W. Gibson, of Jacksonville, and Smithdeal, Shook, Spence & Bowyer, of Dallas, for plaintiff in error.
Perkins & Perkins, of Rusk, and Butler, Price & Maynor and Marsh & McIlwaine, all of Tyler, for defendants in error.

HARVEY, P. J. This is a suit for damages for libel, brought by R. C. Lattimore against W. C. Roberts and a number of other persons, who, as partners, own and conduct, in the city of Tyler, a school known as Tyler Commercial College. The case was tried to a jury on special issues. Judgment was rendered in favor of the plaintiff, Lattimore, against all the defendants for $2,000 actual damages, and against Roberts for $500 exemplary damages. The Court of Civil Appeals has reversed this judgment and rendered judgment in favor of the defendants. 12 S.W.(2d) 680. The case is now here on writ of error sued out by Lattimore.

It appears in evidence that on March 9, 1926, L. A. Seymour, the director of the bureau of markets, in the department of agriculture of the state of Texas, wrote the following letter to the Tyler Commercial College, of which college W. C. Roberts is the president, to wit:

"Department of Agriculture.
"State of Texas
"Austin
"Geo. B. Terrell, Commissioner.
"W. T. Adams, Chief Clerk.
"March 9, 1926.

"Tyler Commercial College, Tyler, Texas. Gentlemen: Will you kindly refer to your records and furnish me a statement relative to the work done by one Rex Lattimore of Jacksonville, Texas? It is claimed that he completed your course and received a diploma, but I have unofficial information that he did not complete your course and further that he was expelled from your school. I desire to know these facts since indirectly he is an applicant for a position connected with this Department.

"Enclosed is a stamped envelope for reply.
"Yours truly, [Signed] L. A. Seymour.
"L. A. Seymour, Director,
"LAS:MJM         Bureau of Markets."

Roberts, the president of the college, replied to the above letter by writing and mailing to Seymour the following letter on March 12, 1926, to-wit:

"Tyler Commercial College
"Tyler, Texas, March 12, 1926.

"Mr. L. A. Seymour, Austin, Texas. Dear Sir: Answering your letter of March 9th with reference to one Mr. Rex Lattimore of Jacksonville, Texas, beg to say that Mr. Lattimore did not complete any of his work in our school and his record was very bad, indeed, while with us.

"In fact, to be plain with you, he was arrested and put in jail for stealing a typewriter. He was one of the most unsatisfactory students we ever had and we feel that you will be very much disappointed should you give him a place in your organization.

"You understand, Mr. Seymour, how delicate these matters are and we give you this information in strict confidence but we felt like you should know the facts. We assure you we regret very much that it is necessary for us to make such a report on the young man. We are sorry for him on account of his parents as well as himself.

"If you are unable to find some one to fill the place you may have open, if you will give us an opportunity to advise with you about your office help, we will be glad to find you just the kind of man you would want

and endeavor to place one with you that we could honestly recommend.

"Yours very truly,
"Tyler Commercial College,
"[Signed]   W. M. Roberts
"WMR  GT.    W. M. Roberts, President."

This last-quoted letter constitutes the basis of the plaintiff's suit. The defendants urge the defense of privileged communication. The jury found, in answer to a special issue, that Roberts was actuated by actual or express malice in writing said letter. The only question which need be considered here is whether or not this issue of malice is raised by the evidence.

The undisputed evidence shows that the plaintiff never stole a typewriter and has never been arrested or put in jail. Aside from the statement of O. Thornton, hereinafter set out, there is no evidence suggesting a suspicion that Lattimore had ever stolen a typewriter, or had ever been accused of stealing anything, or had ever been arrested or put in jail. During the year 1924, Lattimore attended the college for several months, as a student. While there, he frequently violated the rules of the college by being late at class, absent from class without leave, occupying a seat in the schoolroom other than that assigned to him, conversing in the schoolroom, and such like. In his studies, he made grades ranging from 90 to 98. On one occasion while a student, he wrote an anonymous letter to the principal of the school. This letter contained disrespectful criticism of the principal. Upon inquiry being instituted by the college authorities, Lattimore acknowledged authorship of the letter, and was suspended from school, for the period of 10 days, by Roberts, the president. At the end of this period of suspension he resumed attendance at school. He did not graduate, but quit school of his own accord before finishing the prescribed course leading to a diploma. At the time Seymour wrote his letter of March 9, 1926, a position of employment in the agricultural department was being sought by Lattimore. When Roberts received this letter he (Roberts) showed it to O. Thornton, an employee of the college, and inquired of the latter as to the standing of Lattimore. Thornton replied to the inquiry as follows: 'W. M. I would not recommend him too strongly, because it is my information that he has been in jail for stealing a typewriter." Roberts immediately wrote and mailed the letter to Seymour, of date March 12, 1926. At the time this letter was written, both Roberts and Thornton were interested in furthering the business interests of the college by securing positions of employment for students who had graduated and received diplomas. In the latter part of March, 1926, Lattimore, who

had been apprised of the contents of this letter, by some one in the agricultural department, went to Roberts and complained of the letter. On this occasion, Roberts told Lattimore than he (Roberts) would "advertise" that the statements contained in the letter were false, provided Lattimore "was willing to wipe the slate off on both sides." Roberts never communicated to Seymour a retraction of any of the statements contained in said letter, nor did he otherwise publish such a retraction. But on April 10, 1926, Roberts wrote and mailed to Seymour the following letter:

"Tyler, Texas, April 10, 1926.

"Mr. L. A. Seymour, Director, Bureau of Markets, Austin, Texas. Dear Mr. Seymour: Under date of March 9th, you wrote and asked me for a report of a young man from Jacksonville and I gave you the report as near as I could ascertain it and passed the information to you in confidence because we did not want to wound the feelings of those interested.

"In today's mail, I received a letter from the young man's father in which he seemed very much hurt because I passed the information to you.

"I regret very much that you saw fit to cause Mr. Lattimore to feel unkindly towards us for writing you in regard to the matter. We had no intention of causing any hurt to grow out of the matter, but handled the proposition in what we thought was a businesslike manner and we hope you will be able to convince Mr. Lattimore likewise.

"Will you please let me hear from xn in regard to the matter?

"Yours very respectfully,

"Tyler Commercial College,

"WMR    W. W. M. Roberts, President."

There is evidence to show that, at the time this last-quoted letter was written, Roberts had been convinced of the falsity of the statement, contained in his previous letter, to the effect that Lattimore had been arrested and put in jail for stealing a typewriter.

█ We shall confine our attention to the question as to whether or not the foregoing facts in evidence raise the issue of actual malice, on the part of Roberts, in publishing the defamatory statement last mentioned. For, if Roberts was, in any degree, moved by malice in communicating this false statement to Seymour, the communication cannot be protected as privileged, even though it be granted that the statement was germane to the occasion. Cranfill v. Hayden, 97 Tex. 563, 80 S. W. 609. In this respect, the existence of malice is not to be presumed, but must be shown by evidence; and such malice has been defined to be "ill-will, bad or evil

motive, or such gross indifference to the right of others as will amount to a willful or wanton act." Bradstreet v. Gill, 72 Tex. 121, 9 S. W. 753, 757, 2 L. R. A. 405, 13 Am. St. Rep. 768; International & G. N. R. Co. v. Edmundson (Tex. Com. App.) 222 S. W. 181, 184.

██ We have stated the facts in evidence, which collectively furnish a legal basis, we think, for the fact inference drawn by the jury that Roberts was actuated by malice in publishing the defamatory statement in question. The issue of actual malice is raised by the evidence.

We recommend that the judgment of the Court of Civil Appeals reversing the judgment of the trial court be reversed, and that the judgment of the trial court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.