**GULF CONSTRUCTION COMPANY et al.,**
**Appellants,**

v.

**George E. MOTT, Individually and d/b/a**
**George E. Mott Construction Company,**
**Appellee.**

**No. 252.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

May 28, 1969.

Rehearing Denied July 2, 1969.

Stanley B. Binion, Reynolds, White, Allen & Cook, Houston, for appellants.

Tom R. Letbetter, Law officers of Max Garrett, Houston, for appellee.

BARRON, Justice.

This is a slander action wherein the plaintiff, George E. Mott, individually and doing business as George E. Mott Construction Company, sought recovery of actual and exemplary damages from the defendants, H. R. Walker, Helen Walker and Gulf Construction Company. Defendants answered the suit, and in addition to denying the making of the alleged slanderous statements referred to below, they also pled truth as a complete defense and further pled that the statements if made by Mr. and Mrs. Walker, were made under a qualified privilege.

The suit was tried to a jury and based upon the jury's answers to special issues a judgment was entered below that plaintiff recover from defendants the sum of $15,-000 actual damages and $10,000 punitive damages. Defendants have perfected an appeal to this Court from such judgment.

Defendants contend that the trial court erred in refusing to sustain their motion for judgment non obstante veredicto and to disregard answers of the jury, because the statements made by defendants were not slanderous under the facts and circumstances as a matter of law, and because there is no evidence or finding that such statements contained a defamatory meaning; that the evidence and judicial admissions conclusively establish that the plaintiff has in fact gone broke or bankrupt and that the statements when made were substantially true; that the statements were privileged when made and that there is no evidence of malice; that the judgment is grossly excessive and a remittitur should be ordered, and that there is no evidence to support the damage issues submitted.

In response to special issues the jury found:

(1) that in the fall of 1966 Mrs. Helen C. Walker stated on the telephone to Mrs. W. K. Arthur that "George Mott is bankrupt," and that the defendant meant bankrupt as understood by the average person;

(2) that H. R. Walker stated by telephone in the fall of 1966 to W. K. Arthur that "George Mott is going bankrupt or has gone bankrupt," and that the defendant meant bankrupt as understood by the average person;

(3) that H. R. Walker stated in September or October of 1966 to C. A. Zachary that "I believe George Mott is going bankrupt," and such was understood by the average person;

(4) that H. R. Walker stated to Herb Bailey during the latter part of 1966 that "George Mott is bankrupt and broke," and that such was understood by the average person;

(5) that Mrs. Helen C. Walker stated to Tom Wisdom in October of 1966 that "George Mott is going under or going bankrupt and everyone knew about it," and that such was understood by the average person;

(6) that the words spoken above by defendants were with malice toward George E. Mott;

(7) that Gulf Construction Company was the alter ego of H. R. Walker and Helen C. Walker;

(8) that the statements made by defendants were not substantially true at the time they were made;

(9) and the jury found $15,000 actual damages and $10,000 punitive damages in response to two special issues submitted to them.

A detailed statement of the facts is necessary. The plaintiff and defendants became acquainted in May, 1966. The occasion for their meeting was that the defendants were planning to build a home near Richmond in Fort Bend County, Texas, and the plaintiff was a building contractor. As a result of their meeting, the plaintiff bid on the job, and subsequently a contract was entered into between George E. Mott Construction Company and H. R. Walker and Helen C. Walker, acting by and through Gulf Construction Company, for

the construction of the residence. The contract of May 25, 1966 provided for a total contract price of $57,000 to be paid by defendants to plaintiff in a lump sum upon the completion of the entire project. On June 2, 1966, the parties entered into a supplemental contract which amended the original contract to the extent necessary to provide for installment payments as the work progressed. Pursuant to the contracts, the plaintiff began construction of the residence called for in the plans and specifications, and the structure was ultimately completed in January, 1967. It was during this period of time, more specifically in the fall of 1966, that the alleged defamatory statements were made by defendants concerning plaintiff. The persons to whom the statements were made were Fred Guidry, Tom Wisdom, C. A. Zachary, and Herb Bailey, each subcontractors or suppliers of material to Mott. Statements were also made by defendants to Mr. and Mrs. Arthur. Mr. and Mrs. W. K. Arthur were at the time having a home constructed by George Mott, who had been in the custom home business since 1963 in the Fort Bend County area. Mott as a rule made arrangements for financing principally through Sugar Land State Bank in Sugar Land, Texas. Mott did not have any problems in obtaining financing of his homes prior to January of 1967. It can fairly be said that Mott's credit and his ability to get loans were necessary to the success of his business as a builder. He had to be able to obtain interim financing to be able to exist as a custom home builder, and he built many homes and other structures in the area from 1964 until 1968.

Mott testified that he did not require his first "draw" under the Walker contract, because he was in good shape financially and did not need the money at the time. Mr. Mott and Mr. Walker had problems concerning his draws from the third draw until the very end of the contract, and there is still a lawsuit pending involving the contract matters themselves. Mott first became aware that statements were being made about his financial condition

sometime in September of 1966. At the time the statements were allegedly made, Mott had seven jobs in progress. He testified that he showed a net profit of $13,000 in 1964, a net profit of $19,673.84 in 1965, an approximated net profit of $10,000 in 1966, and an estimated net profit of $1,000 in 1967. He testified that he had no net profit in 1968 at the time of trial. When he attempted to secure jobs after the statements were made, most of the people he contacted wanted to know whether he was bankrupt. A man named Cox refused to deal with him, because he had heard some "unstable" talk concerning Mott's financial condition. This happened more than once. Mott has not started construction of any custom homes since February of 1968, and for all intents and purposes he was bankrupt at the time of trial in November of 1968, and he is now out of the custom home building business.

Plaintiff testified that he had no problems with his subcontractors concerning his finances. Prior to January 1, 1967, Sugar Land State Bank did not refuse to loan him money on interim financing, and no supplier of Mott's refused to give him goods on credit. In the eight months before trial, no one from Fort Bend County contacted Mott about building anything for them. Officials of the bank told Mott that because of the Walker job, and the talk that they heard, the bank was not going to be able to make any more interim financing for Mott, and that the bank was scared of him. When plaintiff's volume of work ceased, with "all of the talk going around," he had trouble keeping up with his bills. In September, October or November, 1966, Mott was in a precarious position financially on the Walker job, and this was before the statements, or most of them, had been made. He limited his statement above to the Walker job. He stated that he was having financial problems because Walker would not pay his construction draws, and that he had to take money from other jobs in order to pay off the subcontractors and suppliers so he could obtain the affidavits or waivers necessary to en-

able him to get the installment draws on the Walker job.

Mr. Mott admitted that he still has not paid all of the bills on either the Walker job, the Arthur job, the Kells job, the Cangelosi job or on the Galindo job, and that some of the contractors had talked about filing Mechanic's and Materialmen's liens. He admitted that on the Walker job subcontractors hounded him for payment and that he could not always timely pay the subcontractors.

H. R. Walker, defendant, testified that two things had happened in the fall of 1966 to make him aware that Mr. Mott had financial difficulties. Those were that after Mr. Mott had certified that all bills had been paid for material in order to obtain a draw, Walker had received calls from numerous people which had proved to him that even though the bills had been certified as paid, they, in fact, had not been paid. Secondly, that a lien had been filed against his property. The lien turned out to be an error, and it was later released. While Walker denied stating to anyone that Mott was going bankrupt or had gone bankrupt, he did testify that Mr. Mott's general financial reputation was the subject of pretty nearly every subcontractor or supplier that called him. When subcontractors asked him about Mott's financial condition, he gave them his opinion. Walker testified that as owner of the project, he was interested in seeing that the subcontractors were paid so as to avoid having liens filed upon his property.

The supplemental contract between the parties expressly provided that plaintiff furnish the owners, Walker and wife, an affidavit that all bills for labor and material used in said residence were paid as of the respective stage of each installment payment as the installment payments were made, and to further furnish evidence of such payment if required by the owners. This provision was not consistently observed by plaintiff, to the great dissatisfaction of Mr. and Mrs. Walker. Mott further claimed that he had done extra work for the Walkers over and above his contractual obligations and that they would not pay him promptly. Mott further testified that Mrs. Walker made a number of complaints and in effect directed the job, which actions he impliedly characterized as ridiculous and unreasonable. He further testified that he had paid out $64,183.77 on the Walker job and had received $56,147.-79. The contractor was to complete the job by September 15, 1966, but it was not completed until January, 1967. The sum of $1,126.80 is still in dispute between the parties.

Mr. Zachary, the brick contractor, did not work for Mott on any jobs after the Arthur home was completed. He further testified that he had not been paid in full by Mr. Mott for the work he did on the Walker job. Herbert Bailey, in the light fixture business, stated that in his business he was concerned with whether a man was bankrupt before he did business with him, and further, that he made it his business to know such things. He did other business with Mott after the first of January, 1967, and that in discussing Mr. Mott, Walker used profanity and numerous curse words. Elton Reynolds, the concrete supplier, testified that Mott was a good pay prior to January 1, 1967 and had a good reputation in Fort Bend County. He had heard some "rumblings" about Mott's financial condition, and he later cut his credit off. Fred Guidry, an electrical contractor, testified that Mott's financial condition was discussed and that it did have an effect on his working with him; that the bankruptcy talk about Mott was pretty widespread in the county because of the type of business Mott was in. He testified that he was much concerned about whether somebody claimed Mott was bankrupt, because the bank would not help with such talk being spread. Tom Wisdom, ceramic tile contractor, testified that Mott was not bankrupt in the fall of 1966, and that it concerned him whether or not the contractor who builds custom homes is bankrupt or not. He had heard the bankruptcy talk from time to time. Melvin Schwartz,

agent for Stahlmann Lumber Company, a supplier, testified that Mott's method of payment started changing in the spring of 1967, and that he was very much concerned whether a contractor is going bankrupt. Prior to the spring of 1967 Mott had always been a good account with the lumber company, and he paid his bills promptly. However, when he was cut off in the spring of 1967 he owed the lumber company nearly $11,000. He had heard the rumors of Mott's alleged bankruptcy.

Mrs. W. K. Arthur testified that Mrs. Walker, whom she did not know and had never met, called her house by telephone in the fall of 1966 and stated to her that the builder of Mrs. Arthur's house, Mr. Mott, went bankrupt. The Arthur home was then being built by Mott. Mrs. Arthur stated that the telephone call greatly upset her because it was the first home the Arthurs had built and that they had all their money tied up in it. Shortly after the telephone conversation, Mrs. Walker came into her store in Rosenburg, and at that time Mr. Mott and Mr. Wisdom were in the store. Mrs. Walker repeated her statements concerning Mott and stated that she had heard that Mott was bankrupt. When Mott was asked about his financial condition by Mrs. Arthur, he was surprised and strongly denied it. Mrs. Arthur stated that she was proud of her new home, but Mr. Arthur denied it and in effect stated that it was not acceptable to him. He further stated that Mr. Walker told him that Mott was broke or was bankrupt, though during his testimony he stated that "maybe Mott was bankrupt" were the words used by Walker.

While each of the persons to whom the alleged slanderous words were related denied steadfastly that he told anyone else about the alleged charges, the evidence shows that talk in the area was extensive, and that word generally got out that George Mott was either broke or bankrupt in the fall of 1966.

At all material times serious disagreement occurred between Mott and the Walkers, Mott contending that he should be paid his draws provided for in the supplemental contract, and the Walkers contending that the work was defective or unsatisfactory and that Mott had not complied with the affidavit or waiver requirements of the contract to protect Walker against liens of subcontractors or workmen. Extras ordered by the Walkers were also the subject of much disagreement. The relations between the parties were certainly not cordial, and the jury could lawfully infer from the testimony that there was ill will of a serious nature between them.

This case poses very narrow questions for decision, but it is our duty to uphold the findings of the jury if such can lawfully be done and if there is evidence to support the findings. The evidence is sharply conflicting, and different inference may lawfully be drawn from the facts.

Defendants do not contend on appeal that there is no evidence to support the statements made to the effect that Mott was bankrupt or broke in the fall of 1966 or even that such findings are against the great weight and preponderance of the evidence. However, they do argue that the statements inquired about are not slanderous under the facts and circumstances of this case, and further, that such statements were substantially true when made and that truth constitutes a complete defense.

██ The general rule is that oral words though false and opprobrious are not actionable without pleading and proof of special damages unless they impute to another the commission of a crime or affect a person injuriously in his office, business, profession or occupation, or unless they falsely and maliciously or falsely and wantonly impute to a female a want of chastity. Buck v. Savage, 323 S.W.2d 363, 368 (Tex.Civ.App.), writ ref., n.r.e.; Billington v. Houston Fire & Casualty Ins. Co., 226 S.W.2d 494 (Tex.Civ.App.), mandamus overr.; Hatcher v. Range, 98 Tex. 85, 81 S.W. 289. The exception which

makes false words spoken of another's condition or conduct actionable per se as will affect one in his office, business or profession, the words must "touch" him in some way that is harmful to one engaged in his particular office, business or profession. Buck v. Savage, supra, 323 S.W.2d p. 368; Scheidler v. Brochstein, 73 S.W.2d 907 (Tex.Civ.App.), no writ hist.; Prosser on Torts, 3rd Ed., Sec. 107, pp. 775–777; 53 C.J.S. Libel and Slander § 32, p. 78. Applying the above rules to the facts in this case involving a building contractor who must rely upon his credit and his reputation as a qualified builder in the community, we can think of nothing that would "touch" one in his business or profession with any more force than to circulate facts that his credit is valueless and that he is bankrupt or broke. Texas Plastics, Inc. v. Roto-Lith, Ltd., 250 F.2d 844 (5th Cir.); Buck v. Savage, supra, 323 S.W.2d p. 369; Prosser on Torts, 3rd Ed., p. 776. Such statements obviously discredit him in his occupation or profession.

Substantial truth of the statements complained of is a complete defense to an action of slander, and the statements need not be literally true. See 36 Tex. Jur.2d, Sec. 52 et seq., p. 338, and cases cited. While Mr. and Mrs. Walker may have suspected that Mr. Mott was bankrupt or broke because he did not satisfy them by his construction work or in the payment of his subcontractors and suppliers, there is much evidence in the record to show that Mott was not bankrupt or broke in the fall of 1966 even though he was struggling to keep his business going and was occasionally in financial straits. Dissatisfaction with the contractor and complaints of this nature do not warrant the circulation of information that the contractor is bankrupt. One cannot aid in bringing on bankruptcy by slanderous remarks, and then claim a defense because of truth. We hold that the evidence is sufficient to support the findings of the jury that the statements made were not substantially true in the fall of 1966 at the time they were made.

As was stated in Buck v. Savage, supra, 323 S.W.2d p. 372, a qualified or conditional privilege comprehends bona fide communications, oral or written, upon any subject in which the author or the public has an interest or with respect to which he has a duty to perform to another owing a corresponding duty. Such privilege is termed conditional or qualified because a person availing himself of it must use it in a lawful manner and for a lawful purpose. The effect of the privilege is to justify the communication *when it is made without actual malice*. When statements are made under circumstances which render it conditionally privileged, though it be false, malice cannot be inferred therefrom, nor can it be based upon the character of the language used alone. Simmons v. Dickson, 213 S.W. 612 (Tex.Com.App.); International & G. N. R. Co. v. Edmundson, 222 S.W. 181, 183 (Tex.Com.App.). The burden of proof is on the plaintiff to prove that the defendants in the exercise of a conditional privilege was prompted or partially prompted by malice or a want of good faith. Nunn v. Webster, 260 S.W. 157 (Tex.Com.App.); Cranfill v. Hayden, 97 Tex. 544, 80 S.W. 609; International & G. N. R. Co. v. Edmundson, supra.

Moreover, if the defendants were in any degree actuated by malice in making or publishing a defamatory statement, *the privilege is lost*. Malice has been defined to be ill will, bad or evil motive, or such gross indifference to the rights of others as will amount to a willful or wanton act. Lattimore v. Tyler Commercial College, 24 S.W.2d 361, 363 (Tex. Com.App.); Buck v. Savage, supra, 323 S.W.2d p. 373. Actual or express malice need not be proved by direct or extrinsic evidence. Proof of facts and circumstances from which it may be reasonably inferred is sufficient. International & G. N. R. Co. v. Edmundson, supra, 222 S.W. p. 184. Proof may be made by showing that the publisher knew that the statement was false at the time he published it, or by showing bad motive in his making the publication by giving it more publicity than

was necessary to protect the interests of the parties concerned, or that the publisher entertained ill will toward the complaining party. Buck v. Savage, supra, 323 S.W.2d p. 373; Missouri Pacific Ry. Co. v. Behee, 2 Tex.Civ.App. 107, 21 S.W. 384, writ ref.

As stated above, we believe the record shows a substantial amount of ill will by defendants toward the plaintiff Mott. There was ill feeling because Mott was demanding payment for extras on the job as directed by Mr. and Mrs. Walker. Mr. and Mrs. Walker called up persons unknown to them by telephone in order to spread the information which they gave that Mott was broke or bankrupt. Walker referred to Mott and his handling of the construction in terms of profanity, and they made such statements to a number of persons. At the trial they both denied having made such statements about Mott. Moreover, the exact terms used by defendants spread over the whole community. While it is possible that some qualified privilege originally existed between Mr. and Mrs. Walker and the subcontractors on the job, in that the subcontractors were entitled to know true facts concerning Mott's financial responsibility, and the Walkers had an interest in being assured that no liens were filed against their property by the subcontractors and workmen, the conditional privilege was lost by reason of the above facts and the findings of the jury, which we hold to be sufficient to support the finding of malice. See Southern Surety Co. v. Davis, 296 S.W. 616 (Tex.Civ.App.), no writ hist. Furthermore, the statements made to Mr. and Mrs. W. K. Arthur bore no semblance of privilege. Mott's construction of the Arthur home was not connected with any interest which defendants may have had, and the Arthurs had no interest whatsoever in the properties being built for the Walkers. We hold that defendants had bad motive or ill will in making the statements under the circumstances, and in giving the statements more publicity than was necessary to protect the interests of the parties possibly concerned.

The findings of the jury were supported by the evidence.

Defendants' point of error number four poses a more serious problem. By such point of error defendants contend that the judgment entered for plaintiff in the amount of $25,000 is so grossly excessive that its very size in the light of the whole record indicates that it is the result of passion or prejudice, in total disregard of the evidence. They seek remittitur under Rule 440 of the Texas Rules of Civil Procedure.

Each of the recipients of the slanderous statements testified in substance that they continued working for Mr. Mott after having such statements made to them. Mr. and Mrs. Arthur testified that they continued with Mott as contractor on construction of their residence. Furthermore, all of the persons involved testified that they did not repeat the statements made to them to other persons. The evidence further shows that at all material times Mott was having serious family difficulties, and such situation culminated in a divorce filed by Mott against his wife. His wife had worked for him in his business of general contractor and played an important role therein. The record shows that such family difficulty had a part in the failure of his business.

We have made a careful examination of the entire record relative to the remittitur sought by defendants, and in view of the entire record, most of which is summarized in this opinion, we are of the opinion that the verdict is excessive under the circumstances. We therefore conclude that the actual damages as found by the jury is excessive in the amount of $5,000, and that the punitive damages as found is excessive in the amount of $2,500. See Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017; Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835.

The judgment of the trial court will be affirmed on condition that plaintiff, George E. Mott, individually and doing business as George E. Mott Construction

Company will file in this Court within fifteen (15) days from date hereof a remittitur in writing of $7,500. Otherwise said judgment will be reversed and the cause remanded for a new trial.

Affirmed on condition of remittitur.

### ON FILING OF REMITTITUR

Appellee, George E. Mott, Individually, and d/b/a George E. Mott Construction Company, has filed herein a remittitur in the amount of $7,500.00, as suggested by this Court. The judgment of the trial court in favor of George E. Mott, Individually, and d/b/a George E. Mott Construction Company, will be reformed in accordance with the remittitur, as to allow appellee, George E. Mott, Individually, and d/b/a George E. Mott Construction Company, recovery of $17,500.00 against the appellants, Gulf Construction Company, H. R. Walker and Helen Walker. The judgment as thus reformed will be affirmed. The cost of appeal will be taxed against the appellee, George E. Mott, Individually, and d/b/a George E. Mott Construction Company.

The judgment of the trial court is reformed and affirmed.