**Reversed and Remanded and Opinion filed November 26, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-01048-CV

## JOANIE STEINHAUS, INDIVIDUALLY, AND TURTLE ISLAND RESTORATION NETWORK, Appellant

## V.

## BEACHSIDE ENVIRONMENTAL, LLC, Appellee

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 18-CV-0931**

## OPINION

In this appeal, we hold that a nonprofit corporation and one of its directors are entitled to dismissal of a company's claims governed by the Texas Citizens Participation Act (TCPA)[1] because the appellants proved a qualified privilege and the company failed to establish a prima facie case to support its claims. Thus, we

---

[1] *See* Tex. Civ. Prac. & Rem. Code ch. 27; *see also In re Lipsky*, 460 S.W.3d 579, 584 & n.1 (Tex. 2015).

reverse the trial court's order denying the appellants' motion to dismiss and remand for the trial court to award relief under the TCPA.

## I.   BACKGROUND

Beachside Environmental, LLC sued Joanie Steinhaus and the Turtle Island Restoration Network (TIRN) (collectively, appellants) for defamation per se, tortious interference with contractual relations, and tortious interference with prospective contractual relations. Appellants filed a motion to dismiss under the TCPA, and the parties filed affidavits and other evidence.

Beachside, a company partially owned and managed by Hernan Botero, had been providing beach cleaning and grooming services since 2012 to residential subdivisions and condominiums on the island. The Galveston Island Park Board of Trustees[2] also had been cleaning beaches using heavy equipment and vehicles. To do so required a federal permit, but none had been obtained until the Park Board ultimately obtained one in 2017. The Park Board spent about $100,000 to obtain the permit. The United States Army Corps of Engineers issued the Park Board a permit, which covered areas where Beachside also operated. The Park Board initially authorized Beachside to work "under" the permit for beaches on the island not directly cleaned by the Park Board, and in return Beachside or its customers would pay fees.

The permit prohibited the "take"[3] of certain endangered species, allowed some incidental take, and imposed conditions to prevent take. The parties agree that Beachside was required to comply with the permit's conditions for beach

---

[2] The parties appear to disagree about the official or proper name for the Park Board. We use the name identified in the permit, discussed below.

[3] Under the Endangered Species Act, "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

2

cleaning, among other conditions. Beachside acknowledges that it was required to (1) notify appellants prior to cleaning any beaches; (2) have a trained and certified "spotter" or "monitor" present during cleaning; and (3) only remove seaweed (sargassum) if the seaweed covered more than 10% of the area.

The TIRN is a nonprofit corporation "dedicated to the preservation and protection of marine wildlife." Steinhaus is the Gulf program director for the TIRN, and her duties include overseeing and directing projects on the upper Texas coast related to ocean conservation and habitat and watershed protection. Her duties include the protection of nesting and stranded turtles from mechanized beach cleaning and raking activity.

The permit requires the TIRN to conduct "sea turtle patrols" in Galveston as part of a "two-part monitoring plan," with the goal of detecting and protecting species that may be impacted by beach maintenance equipment. The permit provides, "The Park Board should coordinate with TIRN to ensure all proposed beach areas that will be maintained during the sea turtle nesting season are patrolled daily." The permit requires monitors to work in collaboration with sea turtle patrollers from the TIRN.[4]

Steinhaus testified that the operations manager for the Park Board asked Steinhaus to notify him if she observed any violations of beach maintenance operations. Appellants adduced other evidence indicating that the United States Army Corps of Engineers could revoke the Park Board's permit if beach cleaning

---

[4] The permit also explains that sargassum removal may only occur when the sargassum "on the wrack line exceeds 10% of the beach template," and sargassum removal may only occur "between the Mean High Tide line and the landward 3 foot contour line." The permit requires a wrack line at the high tide mark to remain after beach grooming is completed. Appellants contend, and Beachside does not dispute, that a "wrack line" is a "coastal feature where organic material, such as seaweed, is deposited during high tide." *See* Tex. R. App. P. 38.1(g) (court accepts as true facts stated unless contradicted).

3

was not performed in compliance with the permit, and the Park Board had been concerned about losing its permit if vendors failed to abide by the permit's terms and conditions.

In May 2018, Steinhaus made the following statements, among others, at a meeting of the Park Board's Beach Maintenance Advisory Committee:

> . . . I feel that, um, Hernan is out more frequently raking the beach and not leaving the wrack line that is required. So those are definite concerns of mine, and the placement of the material when it's done. I personally have been on the beach, patrolling and not[—]he has not had a sea turtle monitor on the beach. And I have called him, and requested to know why there was not a monitor on the beach. So those are all concerns.

In its petition, Beachside alleged that the appellants' defamatory statements were that (1) Beachside was "out more frequently raking the beach and not leaving the [w]rack line that is required"; (2) Beachside "has not had a sea turtle monitor on the beach" when Steinhaus was patrolling; and (3) Steinhaus called Beachside and "requested to know why there was not a monitor on the beach."

In their motion to dismiss under the TCPA, and more fully developed in their reply, appellants argued among other grounds for dismissal that appellants had proven a qualified privilege defense and that Beachside failed to make a prima facie case for its claims. The trial court denied the motion, and appellants bring this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(12).

## II.    ANALYSIS

In ten issues, appellants contend that the trial court erroneously admitted evidence and denied the motion to dismiss. We do not recite all the arguments because the third and tenth issues are dispositive. *See* Tex. R. App. P. 47.1. In their tenth issue, appellants contend that they proved an affirmative defense of qualified

4

privilege to the defamation claim and that Beachside failed to show appellants' actual malice. In their third issue, appellants contend that Beachside failed to show a prima facie case for any element of its tortious interference claims.

## A.    TCPA Motion to Dismiss and Standard of Review

The TCPA protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). The TCPA provides a special procedure for expedited dismissal. *Id.* First, movants such as appellants must show by a preponderance of the evidence that the plaintiff's claim is based on, relates to, or is in response to the movant's exercise of the right of free speech, the right to petition, or the right of association. *Id.* (citing Tex. Civ. Prac. & Rem. Code § 27.005(b)).[5] Beachside concedes that its claims are governed by the TCPA because appellants' statements were made in connection with their exercise of the right to petition. *See* Tex. Civ. Prac. & Rem. Code § 27.001(4).

Because this initial burden has been met, the burden shifts to Beachside to establish, by clear and specific evidence, a prima facie case for each essential element of the claim in question. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (citing Tex. Civ. Prac. & Rem. Code § 27.005(c)). Even if Beachside satisfies this burden, a court will dismiss the action if appellants establish by a preponderance of the evidence each essential element of a valid defense. *See id.* (citing Tex. Civ. Prac. & Rem. Code § 27.005(d)).

We review the trial court's denial of a motion to dismiss de novo. *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.—Houston [14th

---

[5] The TCPA was amended after Beachside filed suit. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law Serv. 684, 687. We apply the version of the statute before the 2019 amendment. *See id.*

Dist.] 2017, no pet.). Under this standard, we make an independent determination and apply the same standard used by the trial court in the first instance. *Id.*

## A. Defamation and Qualified Privilege

The elements of defamation include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) made with the requisite degree of fault, and (4) damages in some cases. *In re Lipsky*, 460 S.W.3d at 593. Generally, the status of the plaintiff determines the requisite degree of fault. *See id.* A private individual need only prove negligence, whereas a public figure or official must prove actual malice. *Id.* However, even a private individual must prove actual malice if the circumstances support the application of a qualified privilege. *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 610 (Tex. App.—San Antonio 2018, pet. denied) (citing *Espinosa v. Aaron's Rents, Inc.*, 484 S.W.3d 533, 543 (Tex. App.—Houston [1st Dist.] 2016, no pet.)); *see also Thomas-Smith v. Mackin*, 238 S.W.3d 503, 509, 511 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (noting that the burden would be on the private individual plaintiff to prove malice if the defendant proves the affirmative defense of qualified privilege); *Gulf Const. Co. v. Mott*, 442 S.W.2d 778, 784 (Tex. App.—Houston [14th Dist.] 1969, no writ) ("The burden of proof is on the plaintiff to prove that the defendants in the exercise of a conditional [or qualified] privilege was prompted or partially prompted by malice or a want of good faith."). "Actual malice" means that the statement was made with knowledge of its falsity or with reckless disregard for its truth. *In re Lipsky*, 460 S.W.3d at 593.

A qualified privilege—sometimes called a "conditional" privilege—arises out of the occasion upon which the false statement is published. *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015) (citing *Hurlbut v. Gulf Atl. Life. Ins.*, 749 S.W.2d 762, 768 (Tex. 1987)). The occasions that may give rise to a conditional

privilege are described in the Restatement. *Id.* (citing *Hurlbut*, 749 S.W.2d at 768 (citing Restatement (Second) of Torts §§ 594-598A (1977))). Circumstances that may give rise to a qualified privilege include those that induce: "(1) a belief that publication protects the publisher's interest; (2) a belief that publication protects the interest of certain recipients or third persons; (3) a belief that a person sharing a common interest in the published information is entitled to know that information; (4) a belief that the publication protects a family member of the publisher or of certain recipients or third persons; and (5) a belief that an important public interest requires publication." *Granada Biosciences, Inc. v. Forbes, Inc.*, 49 S.W.3d 610, 619 (Tex. App.—Houston [14th Dist.] 2001), *rev'd on other grounds*, *Forbes, Inc. v. Grranada Biosciences, Inc.*, 124 S.W.3d 167 (Tex. 2003); *see also Cain v. Hearst Corp.*, 878 S.W.2d 577, 582 (Tex. 1994) ("Qualified privileges against defamation exist at common law when a communication is made in good faith and the author, the recipient or a third person, or one of their family members, has an interest that is sufficiently affected by the communication."). This court has described a qualified or conditional privilege as "bona fide communications, oral or written, upon any subject in which the author or the public has an interest or with respect to which he has a duty to perform to another owing a corresponding duty." *Mott*, 442 S.W.2d at 784.

A qualified privilege is lost if abused. *See Writt*, 464 S.W.3d at 655; *Knox v. Taylor*, 992 S.W.2d 40, 55–56 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see also* Restatement (Second) of Torts § 599. Abuse occurs if the statements are made with actual malice. *See Writt*, 464 S.W.3d at 655; *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995) ("Proof that a statement was motivated by actual malice existing at the time of publication defeats the

privilege.").[6] And abuse may occur if the statements are communicated to persons who do not have an interest or duty in the matter to which the communications relate. *See Randall's*, 891 S.W.2d at 646 (privilege "remains intact" as long as there is no excessive communication); *see also Thomas-Smith*, 238 S.W.3d at 509–10 (noting that the casual or accidental presence of third party will not result in loss of privilege). *See generally* Restatement (Second) of Torts § 604 & cmt. a (abuse of privilege occurs if speaker knowingly publishes the matter to a person whom publication is not otherwise privileged unless the speaker reasonably believes that the publication is a proper means of communicating the defamatory matter).

Once a defendant establishes that a communication is conditionally or qualifiedly privileged, the plaintiff must then show that the privilege is lost. *See Knox*, 992 S.W.2d at 55–56 (citing *Denton Publ'g Co. v. Boyd*, 460 S.W.2d 881, 884 (Tex. 1970)); *see also KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 714–15 (Tex. 2016) (reaffirming the defendant's burden to establish the applicability of a privilege and the plaintiff's burden to establish falsity). *See generally* Restatement (Second) of Torts § 613 (burden on defendant to prove the privileged character of the occasion; burden on the plaintiff to prove abuse of a conditionally privileged occasion).

Appellants contend that their communication to the Park Board about Beachside's activities are privileged because appellants and the Park Board each had an interest sufficiently affected by the communication and that appellants had a duty to report violations of the permit to the Park Board. Beachside does not

---

[6] We apply the "actual malice" standard rather than mere common law malice. *See Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 313 (5th Cir. 1995); *Hagler v. Proctor & Gamble Mfg. Co.*, 884 S.W.2d 771, 771–72 (Tex. 1994) (per curiam); *Dun & Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896, 900–01 (Tex. 1970). *But see Houston v. Grocers Supply Co.*, 625 S.W.2d 798, 801 (Tex. App.—Houston [14th Dist.] 1981, no writ) (applying common law malice to qualified privilege).

contest that appellants had an interest or duty sufficiently affected by the communication. Indeed, the evidence shows that appellants and the Park Board each had interests related to the communication. Appellants had an interest in protecting endangered species, and the Park Board had an interest in seeing compliance with the permit. The Park Board and the TIRN had a duty to work together under the permit, and Steinhaus testified that the Park Board asked her to report suspected violations of the permit. The evidence for privilege is even greater than in *McDowell v. State*, 465 F.2d 1342 (5th Cir. 1971), in which the court of appeals upheld the application of a qualified privilege. *See id.* at 1344–45. The defendant was the executive director of a charitable group whose purpose was to foster the treatment, care, and rehabilitation of mentally disabled children. *Id.* at 1345. The defendant made the defamatory statement to members of the State's governing board, whose official duties were to act in furtherance of the purpose of the charitable group. *Id.* The statement concerned an allegation that an employee of the board had "imputed a canine status to the mothers" of several board members. *Id.* 1344. The court held that the defendant and the recipients of the communication shared a common interest in the care of mentally disabled children and the harmony and competency of the staff employed by the State who worked with the children. *See id.* at 1344–45.

Beachside contends that appellants abused the privilege because (1) appellants acted with malice or improper purpose, and (2) the statements were communicated to people not having an interest or duty in the matter to which the communications related. Beachside has the burden to establish either of these abuses. *See Knox*, 992 S.W.2d at 55–56; Restatement (Second) of Torts § 613.

Regarding malice, Beachside contends that Steinhaus "may have even known that her statements were false at the time of publication because she had

observed a *competitor* of Appellee operating out of Permit compliance, not Appellee."[7] Beachside adduced some evidence that Steinhaus's statements were false, but the falsity of the statement itself cannot prove actual malice. *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 125 (Tex. 2000) (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 681 (1989)); *see also Cheatwood v. Jackson*, 460 S.W.2d 528, 530 (Tex. App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.) (regarding proof of actual malice to defeat a conditionally privileged statement, "proof of malice on the part of the defendant cannot be inferred from the falsity of the statement alone"). The record does not contain evidence that Steinhaus knew she had not observed Beachside before she made the defamatory statements; thus, there is no evidence that Steinhaus knew her statements to be false.

Nor is there any evidence that Steinhaus made the statements with reckless disregard for their truth. There is no evidence that Steinhaus made an "inherently improbable" assertion or made the statement "based on information that is obviously dubious." *See Bentley v. Bunton*, 94 S.W.3d 561, 596 (Tex. 2002). Beachside contends that appellants have the motive to stop all beach cleaning practices, but "an injurious motive alone is insufficient to establish a prima facie case of actual malice." *Rodriguez v. Gonzales*, 566 S.W.3d 844, 855 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).[8] And, Botero's self-serving denial of improper activity does not show that Steinhaus spoke with knowledge of the falsity

---

[7] Steinhaus described in her affidavit, and attached pictures, to identify instances that she claimed were of Beachside's cleaning without monitors and the proper wrack line. The trial court sustained Beachside's objections to some of this evidence, and Beachside adduced evidence that Steinhaus's pictures in fact were of a different company's activities.

[8] Even if appellants' motive were relevant under a common law malice standard, *see supra* note 6, Beachside has not identified any evidence of appellants' ill will or a bad or evil motive directed at Beachside. Beachside does not cite to the record to support its contention that appellants "want to stop any such beach cleaning practices at all costs."

of the statements or reckless disregard for the truth. *Cf. Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 427 (Tex. 2000) ("The mere fact that a defamation defendant knows that the public figure has denied harmful allegations or offered an alternative explanation of events is not evidence that the defendant doubted the allegations."). Beachside has not adduced prima facie evidence of actual malice.

Regarding excessive communication, Beachside contends that appellants made the statements at a public meeting where the audience was not confined to only those having an interest or duty in the matter. Beachside points to no evidence in the record to support its contention that persons other than the Park Board members or Botero heard the statements. Thus, Beachside has not adduced prima facie evidence of excessive communication. *See Mendez v. Kavanaugh*, No. 13-11-00622-CV, 2012 WL 3594283, at *5 (Tex. App.—Corpus Christi Aug. 21, 2012, no pet.) (mem. op.) (affirming summary judgment for defendant based on qualified privilege despite evidence that the defamatory statements were posted on a communal board and open for the public to see); *see also Merlo v. United Way of Am.*, 43 F.3d 96, 98–99, 104–05 (4th Cir. 1994) (no abuse of the privilege by excessive publication when a non-profit corporation published report to national news media concerning financial improprieties of former executives because the non-profit's millions of donors had a legitimate interest in the subject matter).

Because appellants established by a preponderance of the evidence that the qualified privilege applied, and Beachside has not shown abuse of the privilege, the trial court erred by denying the motion to dismiss Beachside's defamation claim. Appellants' tenth issue is sustained.

## B. Tortious Interference Claims

In its petition, Beachside asserted claims for tortious interference with contractual relations and prospective relations. Beachside alleged that harm

resulted from appellant's "statements" and "falsehoods." Appellants argued in the motion to dismiss that Beachside's claims were covered by the TCPA, and Beachside concedes on appeal that "Appellants' statements were made in connection with their exercise of their right to petition." It is clear from Beachside's pleadings that the tortious interference claims are based on the same facts alleged to support the defamation claim and that all the claims are covered by the TCPA. *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) ("When it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more.").

Beachside has not pointed to any evidence, either in the trial court or on appeal, to support a prima facie case for any element of its tortious interference claims. Thus, the trial court erred by denying the motion to dismiss these claims. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b)(1)(B), (c). Appellants' third issue is sustained.

## III. CONCLUSION

Appellants established that the TCPA applies to Beachside's claims and that appellants' statements were conditionally privileged. Beachside failed to show abuse of the privilege, or any element of its tortious interference claims. Thus, the trial court erred by denying the motion to dismiss Beachside's claims.

We reverse the trial court's order and remand for the trial court to award appellants relief under Section 27.009 and dismiss the action. *See Joselevitz*, 524 S.W.3d at 865.

/s/     Ken Wise
        Justice

Panel consists of Justices Christopher, Wise, and Hassan.

12